# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

## STATE OF MAINE

---

ARTHUR WHITMAN *vs.* MARK ALLEN.

Oxford. Opinion June 6, 1923.

*Technical questions of pleading are waived, unless the contrary appears, on report.*
*Contracts of a minor, at common law except for necessaries, are voidable on his*
*part. An infant seeking to avoid a contract must restore the specific prop-*
*erty received under the contract, or account for it unless he has wasted,*
*consumed or destroyed it, and property taken in exchange for the*
*original property is under the same obligation. Burden of*
*proof is on the minor to show a legal reason for non-*
*restoration.*

1.  When a case is submitted to the Law Court on report, all technical questions of pleading are deemed to be waived unless the contrary appears.
2.  At common law the contracts of a minor except for necessaries are voidable on his part and can be rescinded or disaffirmed by him, either during his minority or within a reasonable time thereafter.
3.  R. S., Chap. 114, Sec. 2, relating to ratification in writing applies to actions against a minor, not to those brought by him, and is not involved here.
4.  When an infant who seeks to avoid an exchange or sale of personal property has in his possession the specific property which he received under the contract, or any part of it, he must restore it or account for it unless he has wasted, consumed or destroyed it, rendering restoration impossible.
5.  The doctrine of restoration should be extended so as to include not only the specific property received by the minor but in case he has exchanged that original property for other property, the latter must take the place of the original and come under the same obligation.
6.  The burden of proof rests on the minor, if he would excuse or explain his failure to restore, to show a legal reason for such non-restoration.

Vol. 123—2

. On report. An action of assumpsit on account annexed to recover the value of personal property given in exchange for other personal property by the plaintiff when a minor, and the value of personal property mortgaged to secure a loan by the defendant to the plaintiff when a minor, without restoring or offering to restore the property received by him in exchange, and the money received as a loan secured by the mortgage in the second transaction, having disaffirmed both transactions after becoming twenty-one years of age by bringing the suit, relying upon infancy. The defendant pleaded the general issue under which he contended that the action could not be maintained because plaintiff had not restored the property received by him. At the conclusion of the evidence by agreement of the parties the case was reported to the Law Court. Judgment for plaintiff for $100.

The case is fully stated in the opinion.

*Alton C. Wheeler*, for plaintiff.

*Henry H. Hastings and Frederick R. Dyer*, for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

CORNISH, C. J. The case here presented on report is that of a minor who had made two separate and independent trades with the same party, one an exchange of personal property and the other a mortgage of personal property as security for money borrowed. After attaining his majority the minor disaffirmed both trades by bringing this suit to recover the value of the property transferred to the defendant without restoring or offering to restore or to be accountable for the property received by him in exchange in the first instance, or the money received in the second. His action is based upon his infancy. Another claim, that of plaintiff's mental incapacity, was raised and pressed, but the evidence fails to substantiate it and that issue may be disregarded, leaving only the question of infancy for consideration.

It might be questioned whether the plaintiff's rights, if any, could technically be established in this form of action which is assumpsit with an account annexed for the value of the goods exchanged and with a common count for goods sold and delivered. There is force in the defendant's contention that if the contracts were voidable by

reason of infancy, title never vested in the defendant or if it vested it was a conditional vesting subject to being divested, and, upon disaffirmance, the plaintiff's remedy would be by replevin if the property were still in the defendant's possession, or by trover if he had disposed of it.

But when a case is submitted to the Law Court on report, all technical questions of pleading are deemed to be waived unless the contrary appears. *Pillsbury* v. *Brown*, 82 Maine, 450; *Elm City Club* v. *Howes*, 92 Maine, 211; *Rush* v. *Buckley*, 100 Maine, 322; *Robbins* v. *Railway Co.*, 100 Maine, 496. The contrary does not appear here, the certificate of the presiding Justice being in the usual form. We may, therefore, consider and determine the rights of the parties independent of technical pleading and view the action as equitable in its nature, the defendant in equity and good conscience being asked to account for the value of the property transferred to him under a voidable contract since disaffirmed.

The essential facts are these: The plaintiff was born on October 17, 1899, and attained his majority on October 17, 1920. During the Summer and Fall of 1919 he was living in Woodstock and was engaged in the business of buying, butchering and selling cattle, sheep and hogs, conveying many of them to Auburn. The defendant is a retail merchant at Bryant's Pond, having resided there many years. He had known the plaintiff well and had given him credit at various times for goods purchased at his store.

In August, 1919, the plaintiff bought a second-hand Ford truck known in this case as the red truck from Ripley and Fletcher at the agreed price of $600, paying $100 in cash and giving his father's note for the balance, which note the father subsequently paid. In the early part of October, 1919, he took this truck after a season of very hard usage to a garage in Bethel for repairs. Later in the same month he went to the defendant and solicited him for an exchange of the red truck, still in the garage, for a lighter truck owned by the defendant. This lighter truck with its repairs stood the defendant about $450 or $500. They made an exchange, the defendant giving the plaintiff in addition to his light truck a store account against him amounting to about $50. The defendant paid a substantial repair bill on the red truck, so that the trade would seem to be a fair one on both sides, the plaintiff's truck in its unrepaired condition

being worth no more than the defendant's truck plus the discharged store account. The plaintiff exchanged the light truck the next day with one Stevens for a horse.

On the evening of October 18, 1919, a second transaction took place. The plaintiff solicited the defendant for a loan of $200 giving his Holmes note for that amount secured by a Ford touring car then in a garage for repairs. This car he had obtained from his father at an agreed price, before being damaged, of $350 but had never paid for it. The defendant made the loan, giving the plaintiff $100 in cash and a check for $100 and taking the Holmes note and the car. Defendant also paid the repair bills on this car amounting to $125 of which amount $96.89 had been incurred on Whitman's credit before the trade, and the balance on Allen's credit after the trade. Allen took the car home, commenced but did not complete foreclosure proceedings, used it for about a year and then sold it to one Littlehale.

We will consider the legal rights of the parties in these two transactions separately.

### FIRST TRANSACTION.

The single legal problem in the first exchange is whether the plaintiff can recover in this action the full value of the red truck and not account for or give credit for the value of what he received, the small truck and the store account a part of which was for necessaries.

At common law the minor was conceived to be a person needing legal protection because of his inexperience and improvidence. From these he must be saved. Hence it was held that the contracts of a minor except for necessaries were voidable on his part and could be rescinded or disaffirmed by him either during his minority or within a reasonable time thereafter.

Our statute has gone a step further and in an action against a minor requires the ratification, if one is claimed, to be in writing, viz.: "No action shall be maintained on any contract made by a minor unless he, or some person lawfully authorized, ratified it in writing after he arrived at the age of twenty-one years, except for necessaries or real estate of which he has received the title and retains the benefit." R. S., Chap. 114, Sec. 2, originally Public Laws, 1845, Chapter 166. This statute applies only in suits brought against

a minor, where he is acting on the defensive. It has no application where one acts on the offensive and seeks to recover the consideration paid by him on a contract made during minority. *Hilton* v. *Shepherd*, 92 Maine, 160. It, therefore, is beside the pending case and we may decide this cause upon general legal principles.

As to the obligation to return or account for the consideration received by the minor, upon his repudiation of an executed contract there is a diversity of authority.

New Hampshire has adopted a broad rule, namely, that a person seeking to avoid an executed contract on the ground of infancy must account for what he has received under it, by restoring or paying the value of whatever remains in specie within his control and allowing for the benefit derived from whatever cannot be restored in specie. *Hall* v. *Butterfield*, 59 N. H., 354; *Bartlett* v. *Basley*, 59 N. H., 408; *Stack* v. *Cavanaugh*, 67 N. H., 149; *Woolbridge* v. *Lavoie*, 79 N. H., 21.

Minnesota has adopted a somewhat similar rule, which is stated as follows: "If the party dealing with the infant is guilty of actual fraud or bad faith, the infant is allowed to recover back what he has paid without making restitution except as to the extent to which he retains in specie that which he has received. Such a case would be a contract essentially improvident calculated to facilitate squandering the infant's estate. But if the contract was free from any fraud or bad faith and otherwise reasonable, fair and a prudent contract for the infant the latter may recover back what he has parted with but must restore what he has received in the way of benefits. The one dealing with an infant is charged with the burden of proving that the contract was in all respects fair and reasonable, not tainted with fraud, undue influence, or overreaching on his part." *Berglund* v. *American Multigraph Sales Co.*, 135 Minn., 67, 160 N. W., 191; *Braught* v. *Graves-May Co.*, 92 Minn., 116, 99 N. W., 417. The reason given for these rules is that minors should not be permitted to use the shield of infancy as a cover, or turn it into a sword with which to injure others dealing with them in good faith.

The overwhelming weight of authority, however, holds to a somewhat narrower rule which is, that if an infant when he seeks to avoid a sale of property by himself has in his possession the specific property which came to him under the contract, or any part of it, he must return it or account for it as a prerequisite to the recovery of the

amount paid by him, unless he has wasted, consumed or destroyed it rendering restoration impossible. The reason on which this rule is based is well stated in a recent case: "To say that he (the minor) shall not have the protection by disaffirmance with which the policy of the law seeks to guard him, unless he has had sufficient prudence to retain the consideration of the contract he wishes to avoid, would in many instances deprive him, because of his indiscretion, of the very defense which the law intended that he should have against the results of his indiscretion." *McGuckian* v. *Carpenter*, 53 R. I., 34. Or as stated more concisely in an early case in this State: "If he had received property during infancy and had spent, consumed or destroyed it, to require him to restore it or the value of it, upon avoiding the contract, would be to deprive him of the very protection which it is the policy of the law to afford him." *Boody* v. *McKenney*, 23 Maine, 517, cited with approval in *Nielson* v. *International Text Book Co.*, 106 Maine, 104. The Rhode Island case, *McGuckian* v. *Carpenter*, supra, is reported in 16 A. L. R. with an extended annotation giving the large number of States in which this rule prevails. Among these it counts Maine, citing as authority therefor *Nielson* v. *International Text Book Co.*, 106 Maine, 104, supra.

Professor Williston in his recent monumental work on Contracts, after stating the various rules with a large number of citations, has this to say by way of approval of the Minnesota and New Hampshire rules: "In Minnesota and New Hampshire the ordinary rule prevailing in regard to necessaries has been extended so far as to hold an infant bound by his contracts, where he fails to restore what he has received under them, to the extent of the benefit actually derived by him from what he has received from the other party to the transaction. This seems to offer a flexible rule which will prevent imposition upon the infant, and also tend to prevent the infant from imposing to any serious degree upon others." Williston Contracts, Volume 1, Section 238.

In our opinion the Minnesota and New Hampshire doctrine is in actual practice in most instances the more equitable, while the almost universal rule is the more logical. This prevailing rule, however, can be administered in an equitable manner if we fully comprehend and appreciate its spirit and meaning, and extend the doctrine of restoration so that it may include not only the specific property received by the minor but in case the minor has exchanged

that original property for other property the latter may take the place of the original and come under the same obligation.

To illustrate the working of this extended rule: Suppose a minor exchanges personal property with an adult and then squanders the property he received in exchange. On attaining majority he disaffirms the contract and seeks to recover the value of the goods he parted with. He can do this because his improvidence in wasting the fruits of his trade imposes no more burden of restoration than does the squandering of money received on a loan for which a note is given. It is simply the result of the improvidence of infancy which the law has always in mind. If, however, the minor may not have the specific property received by him, has neither wasted, consumed nor destroyed it, but has parted with it for a valuable consideration and has its value or any part of it either in money or bank deposits or securities, or in other property, why should not the duty as to accountability attach to the substitute or equivalent as firmly as to the original, and why should not the minor account for it on avoiding the contract? The same reason that impresses the original impresses the substitute. No question of improvidence or immature folly is involved. It carries out precisely the same principles of fair dealing as the required restitution of the specific property. That principle compels the infant to account for benefits actually received and still possessed, and it can make no difference in what form they may happen to exist. The minor is not harmed by the extended rule any more than by the accepted rule. In fact it is the generally accepted rule a little more widely applied. All the rights to which the minor is entitled are fully protected and at the same time justice is done to the other contracting party. To hold otherwise would be morally wrong and what is morally wrong ought not to be legally right.

A leading Federal Case recognized the general principle but the point was raised that the money received by the infant did not exist in specie and therefore could not be restored but had been expended in improvements, and the Supreme Court of the United States disposed of this contention in no uncertain language. "And within the meaning of the rule that upon the infant's disaffirmance of his contract, the other party is entitled to recover the consideration paid by him which remains in the infant's hands or under his control, it may well be held—and gross injustice will be done in this case if it

be not so held—that the money borrowed from Mrs. Utermetile is in every just sense in the hands of Mrs. MacGreal. To say that the consideration paid to Mrs. MacGreal for the deed of trust of 1889 is not in her hands when the money has been put into her property in conformity with the disaffirmed contract, and notwithstanding such property is still held and enjoyed by her, is to sacrifice substance to form and to make the privilege of infancy a sword to be used to the injury of others although the law intends it simply as a shield to protect the infant from injustice and wrong." *MacGreal* v. *Taylor*, 167 U. S., 681, 701.

The Maine cases have acknowledged the generally prevailing rule, but this precise question as to restoration of substituted or equivalent property has not been passed upon.

In *Boody* v. *McKenney*, 23 Maine, 517, the decision turned upon affirmance or disaffirmance.

In *Robinson* v. *Weeks*, 56 Maine, 102, the certificate of stock for which the minor had paid the $200 sought to be recovered had never been delivered to him and therefore could not be restored.

In *Towle* v. *Dresser*, 73 Maine, 252, the consideration was returned and the point decided was that disaffirmance could take place during minority as well as after attaining majority.

In *Hilton* v. *Shepherd*, 92 Maine, 160, and *Lamkin and Foster* v. *Le Doux*, 101 Maine, 581, the vital issue was ratification.

In *Nielson* v. *International Text Book Co.*, 106 Maine, 104, suit was brought by a minor to recover money paid in advance on a contract whereby the defendant was to furnish him with a correspondence course in electrical engineering. The plaintiff returned the books received by him, but the instruction received could not be restored. The court sustained the action holding that restoration of the tangible had been made, of the intangible could not be made, and the legal requirements had been satisfied.

The case at bar calls for the application of what we conceive to be the true rule. The trade was fair and equitable and free from all fraud, imposition or overreaching on the part of the defendant. The only evidence of fraud is the false representation made by the plaintiff to the defendant that he was of age and had a right to trade. Such a false statement on the minor's part is held not to create an estoppel. *Merriam* v. *Cunningham*, 11 Cush., 40; *Knudson* v. *General Motorcycle Sales Co.*, 230 Mass., 54; *Wieland* v. *Kobick*,

110 Ill., 16; *Ridgeway* v. *Herbert,* 150 Mo., 1040; *Whitcomb* v.
*Joslyn,* 51 Vt., 79. But there are well considered cases to the con-
trary, 14 R. C. L., Page 242 and cases cited.

It appears from the evidence that the plaintiff received full con-
sideration for the truck he exchanged. That consideration consisted
of a receipted bill for goods, many of which were necessaries for
which he would be legally liable in any event, and the contract for all
of which he now affirms because he admits on the stand that he was
owing the account. That receipted bill, or the receipt for the bill,
he must still have in his possession and he could restore it.

The light truck the plaintiff exchanged with a third party the next
day after his trade with the defendant, for a horse, and so far as the
evidence discloses his ownership continued and he still has the horse.
We think the burden of proof rests on the plaintiff, if he would
excuse or explain his failure to restore, to show the reason for such
failure. The sequence of events requires it. The plaintiff sues to
recover property disposed of during minority under a contract
never affirmed. The defendant admits the infancy but proves that
he transferred to the plaintiff valuable consideration therefor, either
in the form of specific articles or in money. He is not obliged to
follow the transaction further. "The plaintiff knows what became
of that consideration and can testify to it. The defendant is not
supposed to know. The law says that the plaintiff must restore the
specific benefits received by him or their substitutes or equivalents
if still in his possession or control. If he does not restore, it is his
duty to explain the reason therefor. In the absence of such explana-
tory evidence he must be charged with the value of what he received
or of its substitute, that is, the value still in his possession in another
form. There has been restoration in this case neither of the receipted
bill nor of the horse, and no excuse is offered. We, therefore, find
no basis for recovery in this action based upon the first transaction,
because the consideration and benefits received are still held by the
plaintiff either in the original or the substituted form, and are of
equal value with the truck for whose value he sues.

SECOND TRANSACTION.

On the second transaction the plaintiff received the sum of two
hundred dollars, one hundred by check and one hundred in cash.

He now seeks to recover the value of the touring car which in its disabled condition we find from the evidence to have been worth $200. What did the plaintiff do with the consideration which he received? He testified that he gave the check to a third party in payment of garage bills, and of course that could not be restored. His evidence affords an excuse for non-restoration. What became of the one hundred dollars in cash? On this he gives no explanation. However, it does appear that when he became of age in October 17, 1920, he had from $300 to $500 in money. This may have included the $100 in cash received from the defendant. The plaintiff has not shown that it did not, and, as we have already stated, the burden was on him to show facts justifying a legal reason for non-restoration. He has not done so. We, therefore, think that under the rule he should be charged with this one hundred dollars to be allowed in offset to his claim of $200, the value of his car exchanged with the defendant, leaving a balance of $100 in his favor.

The entry will therefore be,

> *Judgment for plaintiff for $100 with interest from date of the writ and costs.*