[Civil No. 4083.   Filed October 23, 1939.]

[94 Pac. (2d) 865.]

WORMAN MOTOR COMPANY, a Corporation, Appellant, v. STANLEY HILL, by His Guardian ad Litem CHARLES B. McALISTER, Appellee.

Mr. Stanley A. Jerman and Mr. Richard P. Meason, for Appellant.

Mr. W. F. Dains, for Appellee.

ROSS, C. J.—The plaintiff Stanley Hill, by his guardian *ad litem*, commenced this action on Septem-

ber 20, 1937, against the Worman Motor Company to recover the reasonable value of a 1933 used Plymouth Coupe, delivered by him to the defendant as part payment for a 1935 used Ford V–8 Coupe, purchased by plaintiff from defendant on or about November 2, 1936, while he was a minor. The consideration recited in the conditional contract of sale for the Ford was the Plymouth and $304.20, to be paid in twelve monthly payments of $25.35 each, beginning with November 30, 1936. In the written contract the trade-in allowance for the Plymouth is not named; neither is the selling price of the Ford given. It is shown, however, that the selling price of the Ford was $500.50, including the sales tax ($4.50) and certificate of title ($1).

Plaintiff testified that he was to pay in cash $125 in addition to his Plymouth, but the contract he signed called for $304.20. Defendant's evidence is that the trade-in value of the Plymouth was agreed to be $270.50, leaving a cash balance of $230 instead of $304.20 as set out in the contract. This excess, however, is supposed to cover the financing of the deal, such as carrying charges, insurance, discount, etc.

The defendant reconditioned the Plymouth at an expense of $52.57 and sold it under a conditional sales contract realizing thereon $375 or a net of $322.43.

Some time in November, 1936, the plaintiff sold the Ford Coupe to a Mrs. C. D. McNabb for $45 cash (plaintiff says $25.00), who settled with defendant by paying it, or the finance company, the balance of $304.20 due on the Ford. It appears that plaintiff used what he got for the Ford to send his wife to their folks in Colorado.

By this action, which was commenced during plaintiff's minority, he seeks to avoid his contract and to recover the value of the Plymouth Coupe. And defendant defends on the ground that the plaintiff repre-

sented his age at the time of the transaction as 21 years or over, and upon the further ground that plaintiff has not offered to restore defendant to *status quo*. It is uncontroverted that plaintiff was a minor of the age of 19 years when the trade was made, although defendant's agent testified he represented he was over 21. Plaintiff testified that he told defendant's agent that he was born March 21, 1917. Plaintiff was 20 when he filed this action.

The case was tried before the court without a jury and resulted in a judgment in favor of plaintiff for $275, the costs, and $25 for the services of plaintiff's guardian *ad litem*.

The defendant has appealed and, in addition to the defenses in his answer, urges upon the court that the automobile purchased from defendant was a necessity and that plaintiff is liable for it on that ground.

█ Whether the plaintiff, under the circumstances detailed, has the right to disavow his contract and recover what he paid on the purchase price of the Ford Coupe is the question to be answered. The only provisions of the statutes of the state as to the capacity of persons to buy and sell personal property are found in section 2806, Revised Code of 1928, reading:

"Capacity to buy and sell is regulated by the general law concerning capacity to contract, and capacity to transfer and acquire property. Where necessaries are sold and delivered to an infant, or to a person who by reason of mental incapacity or drunkenness is incompetent to contract, he must pay a reasonable price therefor. 'Necessaries' mean goods suitable to the condition in life of such infant or person, and to his actual requirements at the time of delivery."

Section 3040, subdivision 4, Id., provides that a person under 21 years of age is a minor, and that a person 21 years of age and upwards is in his majority, but there is no general statutory law concerning the capa-

city of such persons to enter into contracts "to buy and sell" property. The rule adhered to in this jurisdiction has been that persons 21 years of age or upwards, laboring under no disability, may legally contract, but that persons under that age have not the capacity to enter into binding contracts except for necessaries.

The first case in which we passed upon the capacity of an infant to contract is *Arizona Eastern Railroad Company* v. *Carillo*, 17 Ariz. 115, 149 Pac. 313. It is contended by plaintiff that this case is authority that an infant may disavow his contract and recover what he may have paid thereon without restoring, or offering to restore, what he has received from the other party. In the Carillo case the infant had a claim against the railroad company for damages for personal injuries and settled for $820, which was paid to his parents. Thereafter he brought an action to recover for such injuries and the railroad company set up as a bar to the action the compromise settlement. We held that the infant could repudiate his contract on the ground of infancy and that it was not a prerequisite for him to return the $820 in order to maintain the action, for two reasons: (1) that he had not received the sum paid but that his parents, or his father, had; and (2) that, at all events, the jury was told by the court in its instructions to deduct such sum from its verdict, which was done. We said generally speaking defendant's contention, that the infant cannot be permitted to retain the fruits of his voidable contract and at the same time have standing in a court for damages for the injury complained of, "seems to be, and is, a fair and just proposition." We also said that if the infant had in his possession what he had received he should return it, but if he had placed it beyond his power to return the consideration by reason of his profligacy, or by bad investments, or by his

improvidence, the doors of the court would not be closed against him. In support of this statement, we cited *MacGreal* v. *Taylor,* 167 U. S. 688, 17 Sup. Ct. 961, 42 L. Ed. 326, and *Worthy* v. *Jonesville Oil Mill,* 77 S. C. 69, 57 S. E. 634, 635, 11 L. R. A. (N. S.) 690, 12 Ann. Cas. 688. An examination of the decision in the Jonesville Oil Mill case discloses that the court said:

" . . . The just rule is that the infant should be required to account for so much of the consideration received by him as has been used for purposes the court would sanction as being necessary for him, and so much as may still be in his hands in such form that the court could control it for his benefit if his majority had not been attained, or, if it has, for so much as the infant elected to retain on reaching his majority. . . . "

In *Johnson* v. *Wright,* 20 Ariz. 255, 179 Pac. 958, and in *Pacheco* v. *Delgardo,* 46 Ariz. 401, 52 Pac. (2d) 479, 103 A. L. R. 494, the Carillo case was cited to the point that an infant may repudiate his contract, but the question of restoration was not involved in either of such cases and was not discussed or referred to.

We conclude that so far as our court is concerned the question as to the duty of an infant to make restoration when he repudiates his contract is an open one, and that this court is in a position to decide it in the interests of justice and equity. Of that question, it is said:

"One question of some difficulty has often come before the courts; is the infant (or former infant) bound to return the consideration which he received, or restore the adverse party to the *status quo,* as a condition of avoiding his contract? If this question is answered broadly in the affirmative, the protection given to the infant is seriously impaired and may often be destroyed; for it is precisely because he is supposed improvident, and likely to misuse and squander what he receives, that his contracts are made voidable. And if it is answered without qualification in the nega-

tive, the infant may make the law a means of inflicting gross injustice or even fraud on one who has trusted him. . . . '' 14 R. C. L. 238, section 20.

There is anything but common agreement in the courts as to the minor's duty to restore. One line of decisions is stated to be as follows:

'' . . . If the party dealing with the infant is guilty of actual fraud or bad faith, the infant is allowed to recover back what he has paid without making restitution except to the extent to which he retains in specie that which he has received. Such a case would be a contract essentially improvident, calculated to facilitate squandering the infant's estate. But if the contract was free from any fraud or bad faith and otherwise reasonable, fair, and a provident contract for the infant, the latter may recover back what he has parted with, but must restore what he has received in the way of benefits. The one dealing with an infant is charged with the burden of proving that the contract was in all respects fair and reasonable, not tainted with fraud, undue influence, or overreaching on his part.'' *Berglund* v. *American Multigraph Sales Co.,* 135 Minn. 67, 160 N. W. 191, 193.

The rule in New Hampshire is the same as in Minnesota and is discussed in *Whitman* v. *Allen, infra.*

Another rule, which is the rule in a majority of the states, is that an infant who seeks to avoid a sale of property must, if such property or any part thereof is in his possession, return it or account for it, but that if he has wasted, consumed or destroyed it, making it impossible of restoration, he may notwithstanding recover what has been paid by him. *Whitman* v. *Allen,* 123 Me. 1, 121 Atl. 160, 36 A. L. R. 776.

Professor Williston, after stating the various rules on the question, reached the following conclusion:

"In Minnesota and New Hampshire the ordinary rule prevailing in regard to necessaries has been extended so far as to hold an infant bound by his contracts, where he fails to restore what he has received

234

under them, to the extent of the benefit actually derived by him from what he has received from the other party to the transaction. This seems to offer a flexible rule which will prevent imposition upon the infant and also tend to prevent the infant from imposing to any serious decree upon others." Williston on Contracts, Rev. Ed., vol. 1, sec. 238.

[2] It is apparent from a reading of the cases that the endeavor of the courts has been to follow that rule that would prevent designing adults from overreaching infants by taking advantage of their lack of experience and judgment and inducing them to enter into contracts clearly to their disadvantage. While the protection of the infant's property rights has been a paramount consideration, it has been felt by many of the courts that the infant should not be allowed to use his infancy for the purposes of wrongdoing. In other words, that he should not be permitted to acquire the property of another dealing fairly with him free from any obligation to account therefor upon a rescission by him. This rule

"protects an infant, but yet requires him to deal fairly and honestly with others. He is not allowed to profit from the mere fact of infancy. He cannot speculate at the expense of another. Infancy is a shield, not a sword." *Kelly* v. *Furlong,* 194 Minn. 465, 261 N. W. 460, 461.

With the rule in mind, we turn to the facts of the case. Plaintiff did not return the Ford Coupe nor account for its value or what he actually received for it from Mrs. McNabb, who bought it from him subject to the terms of the conditional sales contract. But the Ford was not a total loss to the defendant. Indeed, it appears that Mrs. McNabb paid to the defendant, or to the finance company which took over plaintiff's paper, the full balance owing thereon by plaintiff and with the acquiescence of defendant became the owner of the Ford. This, we think, was a sufficient ac-

counting for the Ford itself; but he did not return, or offer to return, the $45 he was paid for the Ford by Mrs. McNabb, which he should have done under the rule, providing the contract was a fair one, untainted with fraud or bad faith and otherwise reasonable. Plaintiff does not rely in his complaint upon fraud or bad faith or anything, in fact, except infancy. The suggestion that he thought the balance he was to pay, after deducting the value of the Plymouth, was $125 is not to be seriously considered for the reason that it contradicts the terms of the written contract he had signed, calling for a balance of $304.20. The reason he wanted to trade, while not clearly stated, probably was that "he could not run" the Plymouth. In fact, the evidence shows quite clearly that the carburetor was out of order and that the car had to be repaired before it could be used. There is no contention that the value fixed on the Ford was excessive, or that it was not worth $500.50, including the excise tax and cost of certificate of title. If from that sum the amount paid to defendant by Mrs. McNabb is subtracted, the loss sustained by the defendant would be $196.30, providing of course it is now required to pay the plaintiff the reasonable value of the Plymouth which it took in part payment. However, under the rule plaintiff is not required to account to the defendant for the full value of the Ford Coupe but for the amount that he received, which is the sum paid him by Mrs. McNabb.

It is the defendant's contention that plaintiff should be held to be estopped from rescinding the contract and recovering what he had paid thereon, because he represented to defendant that he was over 21 years of age and thereby induced defendant to enter into contractual relations with him and to part with the Ford Coupe. The evidence as to plaintiff's representations as to his age is in conflict, and if the rule of estoppel

were available the facts upon which to base it have not been established. If a finding were necessary on that issue of fact to sustain the judgment, the presumption would be that the court found there were no misrepresentations by plaintiff as to his age. The effect of misrepresentation of age by an infant upon his contract in the way of estoppel is not therefore passed upon as the facts do not require it.

■■ Defendant also contends that an automobile should be classed as among necessaries. Section 2806, *supra*, provides that an infant furnished necessaries must pay a reasonable price therefor, and that

" 'necessaries' mean goods suitable to the condition in life of such infant . . . and to his actual requirements at the time of delivery."

There are possibly circumstances under which an automobile might be necessary for an infant, but the general rule stated by the courts is that an automobile generally is not necessary for an infant. The cases so holding are found in an annotation, in 78 A. L. R. 392, to *Schoenung* v. *Gallet,* 206 Wis. 52, 238 N. W. 852, 78 A. L. R. 387. In one case (*Braham & Co.* v. *Zittel,* 232 App. Div. 406, 250 N. Y. Supp. 44, 46) it is said:

"While there is no hard and fast rule by which it may be determined just what is and what is not requisite for the reasonable convenience of a minor, and while that question is one which must, of necessity, depend upon the particular facts and circumstances of each case, there is no evidence here from which it can be said that Irving Zittel [the infant] had any actual need for an automobile."

We may say the same thing here. The evidence does not show for what purpose the plaintiff used the automobile. It does not even show what his employment was. In the oral argument, as we recall, his business was stated to be that of picking cotton. But, even so,

the evidence fails to show the car was necessary for him to go to and from his work, or for what purpose it was being used. For all we know, it may have been used only as a pleasure car.

■ Finally, defendant argues that there was no evidence of the market value of the Plymouth car at the time it was turned in on the Ford as part payment. The court found its value to be $275. Our examination of the evidence satisfies us that there was ample testimony to sustain this finding of value.

We have come to the conclusion that the judgment of the lower court should be modified by deducting therefrom the sum of $45, which plaintiff realized out of the Ford Coupe on the sale to Mrs. McNabb, it appearing that this money was used for a useful and beneficial purpose. As so modified, the judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.