McGREGOR, Vice Chief Justice,
concurring in part and dissenting in part:
¶73 I agree with much of the majority opinion. I agree that Davis received a very *392 long sentence following his conviction of four counts of sexual misconduct with a minor, based upon four instances of sexual intercourse with girls under fifteen years of age. Op. ¶ 36. I agree that the United States Supreme Court has now made clear, through its decision in Ewing v. California, 538 U.S. 11, -, 123 S.Ct. 1179, 1187, 155 L.Ed.2d 108 (2003), that in deciding whether a sentence is so grossly disproportionate as to violate the Eighth Amendment, we should apply the approach first announced in Justice Kennedy’s concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 996-1001, 111 S.Ct. 2680, 2702-05, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). Op. ¶ 30. I also agree that applying the Harmelin principles allows us to consider the facts of the crime involved. Op. ¶ 31.
¶ 74 For several reasons, I dissent from the majority’s holding that the Eighth Amendment prohibits the sentence imposed in this case. First, the majority interprets Harmelin too broadly and bases its proportionality analysis not only upon the facts of the crime but also upon its view of the relative culpability of the defendant and relative blameworthiness of the victims. Second, while the majority states that it will apply the proportionality principles of Harmelin, the opinion instead relies upon the approach defined in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), an approach that produces a result different from that reached under the Harmelin analysis. Finally, the majority relies upon factors that, in my view, should not apply to and do not further an Eighth Amendment analysis.
I.
¶ 75 My first point of departure from the majority involves its decision to conduct its proportionality analysis by considering not only the facts of Davis’s crimes but also its subjective characterization of the actions of the victims and the defendant. In Ewing v. California, the Supreme Court considered whether the Eighth Amendment prohibits imposing a life sentence under California’s recidivist statute, commonly referred to as the “three strikes and you’re out” law. 538 U.S. at -, 123 S.Ct. at 1182. As the majority notes, the Ewing Court discussed the nature of the offenses of which Ewing had been convicted prior to engaging in its proportionality review. Id. at-, 123 S.Ct. at 1189-90. The Court had followed a similar practice in earlier Eighth Amendment proportionality decisions.[12] In those decisions, the Court described, although it seemed not to attach great importance to, the crimes committed by the defendants. In this case, adopting that practice would justify our considering more than the language of the statutes under which the jury convicted Davis. That is, we can take into account not simply that this case involves an adult charged with four counts of sexual misconduct with two minors, but also that the jury convicted Davis, a twenty-year-old man, of four counts of sexual misconduct, occurring on four separate occasions, and involving two girls, aged thirteen and fourteen.
¶ 76 The majority, however, takes a far more expansive view of the nature of the offenses and also considers the relative culpability of Davis and of the victims. That approach leads to the most disquieting feature of the majority opinion.
¶ 77 The majority finds significant the victims’ prior sexual history and them “consent” to sexual misconduct by Davis. The opinion discusses, for instance, the fact that T.E. had engaged in sexual activity when she was twelve years old.[13] Op. ¶2. The majority also finds it important to note that the victims “sought Davis out,” Op. ¶¶36, 43, that the victims “knew what they were doing,” Op. ¶ 36, and that they “willingly participated” in the sexual conduct. Op. ¶¶ 36, 43.
¶ 78 I thought we long ago had put aside any approach that blames victims for sexual crimes. The notion that a young victim *393 “asks for it” or deserves to become the victim of sexual misconduct because he or she does not object to the sexual activity must be discarded. Our laws permit no justification defense that relies upon the argument that a young victim seduced his or her violator or consented to the violation, and this court should not suggest that such a justification plays any role in evaluating the culpability of a defendant.
¶ 79 The majority’s decision to examine the personal culpability of the defendant also leads it into a fact-finding role for which this court is not suited. The majority states that “[tjhere is evidence in the record that Davis’s intelligence and maturity level fell far below that of a normal young adult.” Op. ¶ 86. That finding does not inhere in the jury’s verdict, and we have no finding from the trial judge or the jury that this statement accurately describes Davis. We should not base constitutional analysis upon factual findings made by this court while acting in its capacity as an appellate court.
¶ 80 Although this court should not engage in characterizing the relative culpability of Davis and the victims, our justice system does provide a method for undertaking the type of analysis engaged in today by the court. If a trial judge concludes that a sentence required by law is clearly excessive, the judge can enter a special order allowing the defendant to petition the board of executive clemency (the Board) for a commutation of sentence within ninety days after a defendant is committed to custody. Arizona Revised Statutes (A.R.S.) § 13-603.L (Supp. 2002). The trial judge followed that procedure in this matter. Op. ¶ 10. If the Board finds by clear and convincing evidence that the sentence is clearly excessive and that a substantial probability exists that the offender will conform to the law, the Board can recommend that the governor commute the sentence. A.R.S. § 31-402.C.2 (2001). The Board makes its findings, however, only after holding a hearing at which the victim, county attorney, and presiding judge receive a chance to be heard. Id. Rather than rely on that existing procedure, the majority today, without the benefit of a hearing, simply substitutes its judgment for that which the Board might make.
¶ 81 The majority’s decision to consider the relative culpability and blameworthiness of the defendant and the victims as part of an Eighth Amendment proportionality analysis suffers from another shortcoming: It inserts considerable subjectivity into the court’s analysis. The Supreme Court has instructed that the Eighth Amendment proportionality analysis should rely upon objective factors. Ewing, 538 U.S. at -, 123 S.Ct. at 1186 (citing Harmelin, 501 U.S. at 1001, 111 S.Ct. at 2705). The majority’s approach makes following that direction impossible. Would the outcome today differ if the court regarded the defendant as more mature or if the defendant had been twenty-two rather than twenty years of age or if at least one of the victims had not revealed prior sexual activity? Such subjectivity, it seems to me, has no place in the constitutional analysis this case requires the court to make.
II.
¶ 82 The majority concludes, and I agree, that we should apply the principles of Harmelin in conducting an Eighth Amendment proportionality analysis. Op. ¶ 30. Rather than analyze this case under the Hamelin principles, however, the majority actually applies the analysis used in Solem v. Helm, as interpreted by this court in State v. Bartlett, 171 Ariz. 302, 830 P.2d 823 (1992) (Bartlett II), and State v. Bartlett, 164 Ariz. 229, 792 P.2d 692 (1990) (Bartlett I). That approach skews and affects the outcome of the analysis.
¶ 83 In Ewing v. California, the Court announced that the “proportionality principles in our cases distilled in Justice Kennedys concurrence [in Harmelin ] guide our application of the Eighth Amendment....” 538 U.S. at -, 123 S.Ct. at 1187. The Court recognized four principles of proportionality review identified by Justice Kennedy in Harmelin:
“[T]he primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors” — that “inform *394 the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are ‘grossly disproportionate’ to the crime.” Justice Kennedy’s concurrence [in Harmelin ] also stated that Solem “did not mandate” comparative analysis “within and between jurisdictions.”
Id. at -, 123 S.Ct. at 1186-87 (quoting Harmelin, 501 U.S. at 1001, 1004-05, 111 S.Ct. at 2705, 2707).
¶ 84 In applying the Harmelin/Ewing analysis, we must be mindful that the Eighth Amendment contains only a “narrow proportionality principle” that “applies to noncapital sentences.” Harmelin, 501 U.S. at 996-97, 111 S.Ct. at 2702-03. “Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.” Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980). To demonstrate the extremely narrow parameters of the proportionality principle in noncapital cases, the Supreme Court has explained that the principle would “come into play in the extreme example ... if a legislature made overtime parking a felony punishable by life imprisonment.” Id. at 274 n. 11, 100 S.Ct. at 1139 n. 11. This case does not fit within the narrow scope of the proportionality principle that the court purports to apply.
A.
V 85 Under the Harmelin/Ewing analysis, we should first consider the primacy of the legislature and focus our analysis upon the public policy judgments made by the legislature when it enacted the Dangerous Crimes Against Children Act (the Act), which includes A.R.S. section 13-604.01, the sentencing statute at issue here.[14]
¶ 86 We have previously considered the legislature’s intent in adopting the enhanced penalties of section 13-604.01:
The legislature’s purpose in enacting the Dangerous Crimes Against Children Act can be surmised. Protecting the children of Arizona and punishing severely those who prey upon them certainly are two legislative goals. In addition ... the legislature is attempting to address the problem of recidivism alleged to exist in this category of offender.
State v. Wagstaff, 164 Ariz. 485, 490-91, 794 P.2d 118, 123-24 (1990). The language of section 13-604.01 reflects the legislature’s decision to protect, punish, and deter.
¶ 87 Rather than defer to the legislature’s public policy choices reflected in the Act, the majority identifies five factors it deems important in concluding that Davis’s sentence, although required by the clear language of the Act, was grossly disproportionate to the crimes he committed. I find none of the majority’s justifications for departing from the statutory language persuasive.
¶ 88 The majority first concludes that the crimes “involved neither actual nor threatened violence” because the victims consented to the sexual acts, noting that the girls “willingly participated.” Op. ¶ 36. In other words, the crimes involved “non-eoerced sex with two post-pubescent teenage girls.” Id. But the legislature has already made the policy decision that children under the age of fifteen cannot give consent to sexual intercourse.[15]
¶ 89 Our society and legal system recognize that, when a child falls below a particular age, that child lacks capacity to consent to harmful acts committed against the child. Because children cannot protect themselves, society and the law assume responsibility for protecting children in those instances in *395 which a child’s lack of capacity prevents him or her from giving consent:
The state has a recognized interest in the welfare of its citizens who, by reason of age or physical or mental disability, cannot care for themselves. So it is with children of tender years. The conclusive presumption that children less than sixteen years of age are unable to consent to sex acts is but a further extension of the protective arm of government which is universally followed.
Payne v. Commonwealth, 623 S.W.2d 867, 875 (Ky.1981); see also Charles A. Phipps, Children, Adults, Sex and the Criminal Law: In Search of Reason, 22 Seton Hall Legis. J. 1, 33-34 (1997) (noting that protecting children is one of the most consistently expressed reasons for prohibiting sexual conduct with children).
¶ 90 We do not enforce contracts entered into by children because they lack capacity to consent, Worman Motor Co. v. Hill, 54 Ariz. 227, 231, 94 P.2d 865, 866 (1939), and we surely must not place responsibility for determining whether a child should engage in sexual activity with an adult upon the child. Yet the majority adopts just such a view today and makes the victims of these crimes at least partially responsible because they “willingly participated.”
¶ 91 Determining the age of consent requires that a line be drawn. Presumably all would agree that a ten-year-old child could not consent to sexual relations, no matter what words the child used to express consent, and even if he or she had become sexually active at eight years of age. The majority may disagree with the placement of the line drawn for consent by the legislature, but unless the age selected by the legislature is irrational, this court should not engage in re-drawing the lines involving age of consent.[16]
¶ 92 Nor can we take comfort from the fact that these victims were “post-pubescent,” another fact afforded significance in the majority opinion. Op. ¶¶ 36, 43. The age of consent involves mental, not physical, maturity. A profoundly retarded adult could not consent to sexual relations, regardless of his or her physical maturity. A.R.S. § 13-1401.5(b) (2001) (“without consent” includes victim incapable of consent by reason of mental disorder or mental defect). Whether these children were pre- or post-pubescent, therefore, does not affect their capacity to consent.
¶ 93 The majority then observes that Davis “does not have an adult criminal record, nor has he committed any previous crimes against children.” Op. ¶ 36. The record supports that statement, although Davis, of course, did commit more than one crime against children; the jury convicted him of four crimes against children.
¶ 94 The majority also finds support for its holding by observing that post-pubescent sexual conduct appears no less common today than it was in 1990, the year we decided Bartlett I. I do not doubt that the majority’s statement is accurate, but the legislature also presumably knew of “post-pubescent sexual conduct” when it adopted the Act and imposed harsher punishment for those who engage in sexual misconduct with children under the age of fifteen.
¶ 95 The majority further states that “[tjhere is evidence in the record that Davis’s intelligence and maturity level fell far below that of a normal young adult.” Op. ¶ 36. As previously mentioned, this factor relies upon fact-finding undertaken by this court, without the benefit of a hearing, and provides no reliable basis for conducting a proportionality review under the Eighth Amendment.
¶ 96 The next factor considered in the majority’s proportionality review involves its conclusion that “Davis was caught in the very broad sweep of the governing statute, which makes any sexual conduct with a person younger than fifteen years old by a person older than eighteen years old a ‘dangerous *396 crime against childrenId. The statute, by its terms, generally operates precisely as described.[17] We previously have recognized, however, that the legislature used broad language because it intended that an adult who targets a child “assumes the risk that the victim will turn out to be within a protected age group.” State v. Williams, 175 Ariz. 98, 103, 854 P.2d 131, 136 (1993). If the court regards the statute as applying to conduct that the state cannot regulate, we should overturn the statute because it is overbroad. See Purcell v. Super. Ct., 111 Ariz. 582, 584, 535 P.2d 1299, 1301 (1975) (finding that a statute that applies to conduct the state cannot regulate is overbroad). Absent such a determination, we should apply the statute as written to further the legislature’s intent in adopting the Act.
¶ 97 The majority might prefer that different ages apply, both for defendants and victims, Op. ¶ 44 n. 9, and the Arizona Legislature certainly could have selected older or younger ages. Another legislature might well conclude that sexual conduct with a fourteen-year-old child is not a dangerous crime against children unless the adult is twenty-one or twenty-five or thirty years old, or unless the victim is less than fourteen, or less than thirteen, or less than twelve years of age. But we generally leave to the legislature the task of drawing such lines, which must be placed somewhere if we regard dangerous crimes against children as deserving punishment more severe than crimes committed against adults.
¶ 98 We should not conduct a proportionality review without giving full consideration to the policies underlying a challenged sentencing scheme. In Ewing v. California, the Court concluded: ‘When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice.” Ewing, 538 U.S. at -, 123 S.Ct. at 1187. In adopting the Dangerous Crimes Against Children Act, the Arizona Legislature made a judgment that public safety requires severe punishment of adults who engage in sexual conduct with children under the age of fifteen. Our laws have long granted special protection to children, and I do not think the Eighth Amendment prohibits the state from choosing to afford extra protection to children under the age of fifteen when they become victims of sexual misconduct by adults. Although the Act required the trial judge to impose very long sentences in this instance, I would find no gross disproportionality between the crimes and the sentences.
B.
¶ 99 The second principle of proportionality review defined by Harmelin/Ewing, which the majority does not address, directs us to consider the variety of legitimate penological schemes that a legislature may choose to adopt. This court has recognized that, in adopting the Act, the legislature intended to protect children, to punish severely those who prey upon children, and to address the problem of recidivism alleged to exist in this class of offender. Wagstaff, 164 Ariz. at 490-91, 794 P.2d at 123-24. Protection, punishment, and deterrence constitute appropriate penological schemes. Applying this factor of the Harmelin/Ewing proportionality review, then, also indicates that this case does not fall within the narrow range of those sentences that offend the Eighth Amendment.
C.
¶ 100 The final Harmelin/Ewing principle applicable here[18] requires that “proportional *397 ity review be guided by objective factors.” Ewing, 538 U.S. at-, 123 S.Ct. at 1186. I cannot discern the objective factors applied by the majority. Rather than consider objective factors, the majority has elected to base its decision upon factors other than those the legislature emphasized in adopting the Act. I am uncertain how to apply the approach adopted today, which echoes that of Bartlett I and Bartlett II, except to conclude that when an adult under some undefined age engages in sexual conduct with a child above some undefined age, we will find the sentences required by Arizona law grossly disproportionate to the crimes committed, particularly if the victim is post-pubescent and admits to some sexual experience. Those factors do not, in my view, provide the sort of objective analysis envisioned by Harmelin/Ewing.
¶ 101 The majority opinion implicitly recognizes the lack of standards developed for a proportionality analysis by limiting its decision “to the specific facts and circumstances in the record before us,” Op. ¶ 49, the same approach taken in Bartlett I and Bartlett II. Bartlett II, 171 Ariz. at 308-09, 830 P.2d at 829-30 (“As we said before ... ‘[although such a harsh penalty may be justified in the context of other, more heinous crimes ... it is not justified under the specific circumstances of this case.’ ” (quoting Bartlett I, 164 Ariz. at 236, 792 P.2d at 699)); Bartlett I, 164 Ariz. at 241, 792 P.2d at 704 (“In this case, however, we hold that the statutory range of sentencing ... cannot constitutionally be applied to defendant’s crimes under the facts and circumstances of this case.”). The state, defendants, victims and trial courts should be able to rely upon clear principles of analysis that apply to all cases, rather than being required to consider the specific facts of each case without discernible guidelines. The principles of proportionality review set out in Harmelin/Ewing provide such guidelines, and I would follow them.
III.
¶ 102 Although Harmelin/Ewing does not mandate a comparative analysis within and between jurisdictions, the majority devotes much of its opinion to engaging in just such an analysis. Op. ¶¶ 38-43. I disagree with the premise underlying that analysis.
¶ 103 The majority’s intra-jurisdictional comparison relies upon the premise that those convicted of “crimes more serious” receive the same or a lesser presumptive sentence when compared with that given Davis. Op. ¶38. But that conclusion assumes the question. The legislature has determined that sexual conduct with children unable to give consent is a very serious crime. The majority may regard kidnapping of a person older than fifteen, first degree burglary of a residential structure, or arson of an occupied structure as more serious than sexual conduct with a minor, Op. ¶ 40, but the legislature did not. Although the majority assumes that the harm to society and victims for the crimes involved here is relatively slight, the legislature could, and did, decide otherwise.[19]
¶ 104 After considering other decisions that upheld extremely harsh sentences for those convicted of dangerous crimes against children,[20] Op. ¶¶ 41-42, the majority con- *398 eludes that those decisions involve “enormous differences in the nature of the crimes, the harm to the victims and to society, and the culpability of the defendants.” Op. ¶ 42. In reaching that conclusion, the majority again relies upon the notion that these “post-pubescent victims sought Davis out and willingly participated in the criminal acts.” Op. ¶ 43. That statement troubles me on several levels. First, nothing these victims did constituted a criminal act; only Davis committed criminal acts. Second, once again the statement imposes responsibility for an adult’s actions upon victims too young to give consent. Much younger children also “consent” to predatory acts. I am uncertain just where this line of analysis leads us, and I am unwilling to conclude, without the benefit of generally applicable principles, that particular crimes do not merit the punishment selected by the legislature.
IV.
¶ 105 In addition to disagreeing with the majority’s failure to apply the Harmelin/Ewing principles, I cannot agree with several other conclusions reached in the majority opinion.
¶ 106 First, while recognizing that we usually do not consider the imposition of consecutive sentences as part of a proportionality review, the majority finds reason to depart from our general rule. Op. ¶ 47. Although the majority does not make its conclusion explicit, I gather that the majority does not regard a sentence of thirteen years as grossly disproportionate to the crime of sexual misconduct with a child. That is, the majority would not reach the conclusion that the sentences required by law for Davis violate the Eighth Amendment if Davis could have served the sentences concurrently. If that is so, then today’s analysis should focus upon A.R.S. section 13-604.01.K, which requires consecutive sentences, rather than upon section 13-604.01.C. An analysis of section 13-604.01.K would require that we consider the legislature’s reasons for requiring consecutive sentences rather than the facts surrounding the underlying convictions.
¶ 107 I also cannot agree with the majority’s conclusion that we can determine that Davis’s sentence “shocks the societal conscience” because of “the reactions of the trial judge, the jurors, and the victims’ mothers.” Op. ¶ 49. Surely a test of constitutional validity cannot depend upon such subjective factors. Would the result required by the Eighth Amendment be different if these victims’ mothers had been less understanding of Davis’s conduct or more protective of their children? If the trial judge or jurors had not made their comments, would this case pass constitutional muster? Moreover, why should we look to these few individuals to define the societal conscience? The statute adopted by the legislature also reflects societal norms. Why should we regard the personal reactions of those involved in this particular case as more reflective of society’s norms than is the legislation enacted by a representative body? I cannot agree that constitutional analysis should depend upon the subjective factors relied upon by the majority.
¶ 108 Finally, although I heartily agree with the majority that the inordinately long sentence involved here derives partly from the fact that judges in Arizona have no discretion in deciding whether to impose consecutive sentences under these circumstances, I do not agree that the lack of discretion should be considered in our proportionality analysis. As the majority avers, in Ewing v. California, the Supreme Court referred to the facts that the crimes involved were “wobblers” and that both the prosecutor and the trial judge could exercise discretion in the treatment of such crimes. The Court expressly stated, however, “That grand theft is a ‘wobbler’ under California law is of no moment.” Ewing, 538 U.S. at -, 123 S.Ct. at 1189. We cannot, therefore, rely upon Ewing v. California to support the majority’s discussion of the importance of *399 judicial or prosecutorial discretion in conducting this proportionality review.
V.
¶ 109 For the foregoing reasons, I respectfully dissent from paragraphs 13 through 49 of the majority opinion. I concur in the remainder of the decision.

. See, e.g., Harmelin, 501 U.S. at 961, 111 S.Ct. at 2684; Solem, 463 U.S. at 279-84, 103 S.Ct. at 3004-06; Hutto v. Davis, 454 U.S. 370, 370-72, 102 S.Ct. 703, 703-04, 70 L.Ed.2d 556 (1982) (per curiam); Rummel v. Estelle, 445 U.S. 263, 264-68, 100 S.Ct. 1133, 1134-36 (1980).

. For some reason, the majority does not comment upon P.T.’s sexual history, although three of the counts of which Davis was convicted involved her.

. For a comprehensive description of the various provisions adopted as part of the Dangerous Crimes Against Children Act, see State v. Williams, 175 Ariz. 98, 854 P.2d 131 (1993).

. Under A.R.S. section 13-1407, an accused can defend a charge under section 13-1405, the statute under which the jury convicted Davis, by asserting his lack of knowledge of the victim's age if the victim's lack of consent is based on incapacity to consent and the victim is fifteen, sixteen or seventeen years of age. A.R.S. § 13-1407.B (2001). The legislature expressly excluded this defendant from being able to argue that these victims could actually consent to his actions.

. The statutes defining sexual offenses against children frequently involve distinctions based on age. See, e.g., A.R.S. § 13-1405.B (2001) (class of felony depends upon whether victim is under fifteen years of age); A.R.S. § 13-1407.F (2001) (defense to prosecution if victim fifteen, sixteen or seventeen and defendant less than nineteen or attending high school and no more than twenty-four months older than victim and conduct is consensual); A.R.S. § 13-1410.A (2001) (child molestation involves sexual contact with child under fifteen years of age).

. The legislature has recognized some exceptions to the general language of the statute. For instance, A.R.S. section 13-1407.F allows a defendant to assert, as a defense to prosecution, that he is less than nineteen or attending high school and that the victim is between fifteen and seventeen and consented to the sexual conduct. The majority seeks to add further exceptions to the language of the statute.

. The third principle of proportionality review involves the nature of the federal system. Ewing, 538 U.S. at -, 123 S.Ct. at 1186. That factor does not apply to our analysis of state legislation, although we should afford the same deference to legislative decisions involving sentencing schemes as do the federal courts.

. Children involved in sexual conduct are not engaged in harmless fun. Numerous studies point to serious difficulties that result from such activity. For instance, one study found that the frequency of sexual activity during adolescence is related to coerced sex, or sexual victimization, later in life. Janine M. Zweig et al., Adolescent Risk Factors for Sexual Victimization: A Longitudinal Analysis of Rural Women, 17 J. Adolescent Res. 586, 595-96 (Nov.2002). Another study found that adolescents who initiate health-risk behaviors such as sexual intercourse at an early age frequently experience poorer health later in life, lower educational attainment, and less economic productivity than their peers. Kathleen Mullan Harris et al., Evaluating the Role of "Nothing to Lose" Attitudes on Risky Behavior in Adolescence, 80 Soc. Forces 1005, 1008 (Mar. 2002).

. Because Arizona has adopted harsh sentencing laws, many other examples of extremely long sentences exist, both in cases involving crimes against children and in cases involving other crimes. See, e.g., State v. Jonas, 164 Ariz. 242, 792 P.2d 705 (1990) (forty-six years for trafficking in stolen property and sale of one marijuana cigarette to a minor under fifteen); State v. Hummer, 184 Ariz. 603, 911 P.2d 609 (App.1995) (three consecutive life sentences and three concurrent twelve-year sentences for convictions of two counts of sexual conduct with a minor, three counts of furnishing obscene materials to a minor, and one count of molestation of a minor, *398 with two prior felony convictions); State v. Freeland, 176 Ariz. 544, 863 P.2d 263 (App.1993) (life without possibility of parole for twenty-five years for aggravated assault while on probation); State v. Jobe, 157 Ariz. 328, 757 P.2d 604 (App.1988) (fifty-five years for two counts of child molestation).