**John Ruford HILL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 7, 1960.

Fritz Krueger, Somerset, for appellant.

John B. Breckinridge, Atty. Gen., Ray Corns, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, John Hill, was found guilty of voluntary manslaughter and the punishment was confinement for two years in the penitentiary.

Late in the afternoon of June 16, 1959, appellant was driving his automobile along Highway 25, near the small settlement of Snyder in Rockcastle County. The road was straight and the visibility was good. Hill, during the course of the day, had admittedly consumed the contents of six or seven containers of beer. The evidence indicated that he may have also drunk a quarter of a pint of whiskey, but he denied doing this. Regardless of the amount of alcoholic intake, it seems certain that, at this time, appellant was driving properly on the right side of the road and at a legal rate of speed.

At this same time, Arthur Taylor, who was about 65 years of age, had completed a shopping trip and had started his return home. He was walking on the side of the road, off the asphalt pavement, in the direction from which appellant was approaching. Taylor suffered from an affliction—its exact nature was not disclosed—and he seemed to obtain relief from its effects by butting his head against inanimate objects, such as doors, or by tapping his head with bottles.

Appellant saw Taylor walking by the road when he was three or four hundred yards away from the spot of the fatal accident. When appellant was three car-lengths away (49 feet) he saw Taylor turn, place a tobacco stick, which he was carrying, about 18 inches upon the pavement and shove his head against it. A witness who was only 98 feet away, said:

"He was walking along the side of the highway and he set the stick up in the highway, I'll say something like sixteen or eighteen inches and he had the sack on his shoulder and he bent over this way and it looked like he was trying to butt his head down against that stick."

Fred Clark, another eyewitness, gave a slightly different version. He stated that he saw decedent walk over to the edge of the road, drop the sack he was carrying and throw the stick in front of appellant's car. He estimated that Hill was three or four car-lengths away at this time, or a distance which he judged to be 60 or 70 feet. He said Hill was driving between 35 and 40 miles an hour.

Appellant testified that he saw Taylor walking along the edge of the road. He testified "Well, when I first saw him he was walking along and when I got pretty close, he set the sack down and turned around and I was real close to him then and he leaned over like this (demonstrating) and stuck the stick out in the road." He estimated that he was three car-lengths away when that incident occurred.

All the witnesses seemed agreed that there was no other traffic on the road in the accident area at the time it happened, and all agreed that appellant did not apply his brake or change the direction of his automobile to the left in order to avoid striking the decedent. Appellant stated that he did not have time to apply his brake. We think the bare statement of the facts given above disposes of appellant's contention that the evidence does not support the verdict.

A more serious question is presented by appellant's argument that he was entitled

to a concrete instruction on the theory that this was an inevitable accident. We have had before this court many instances where the defendant in a criminal prosecution relied upon facts and circumstances which amounted to an avoidance of the crime, or which had the effect of showing that the accused did not have criminal intent, and we recognized the right of the accused to an accident instruction.

In the recent case of Monson v. Commonwealth, Ky., 294 S.W.2d 78, 81, the early cases are discussed, in addition to the development of the law since the decision in Marye v. Commonwealth, Ky., 240 S.W.2d 852, where an instruction on "sudden emergency" was authorized. It was said:

> "Since the Marye case and the enactment of KRS 435.025, the negligent homicide statute, doubt has been expressed as to whether an instruction on accidental killing by auto is proper. There is no reason perceived why the creation of a lesser included offense should deprive the accused of an instruction to which he previously had been entitled. * * *

> "It is urged that the giving of an accident instruction is unnecessary since the jury must determine under the negligent homicide instruction whether the accused is guilty of negligence. The fallacy of this argument is that it denies the accused the right to have presented to the jury the issue of whether the death may have resulted from some cause other than the negligence of accused."

Appellant's whole defense was based on the idea that he was not guilty of negligence in any sense and that the accident was caused by the negligent and erratic conduct of decedent.

Under the authority of the Monson case, an accident instruction should have been given, and the judgment is therefore reversed.