Jewell Wayne HENDRICKS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

April 22, 1977.

Thomas D. Shumate, Peter J. Flaherty, III, Shumate, Shumate & Flaherty, Richmond, for appellant.

Robert F. Stephens, Atty. Gen., William H. Mohr, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On December 18, 1975, at about 7:30 p. m., the appellant shot and killed his wife Barbara. On March 11, 1976, he was convicted of first degree manslaughter (KRS 507.030) and sentenced to 20 years' imprisonment. His sole defense was that the killing was the result of an accident which occurred while he was cleaning his pistol. The issues raised on this appeal, as taken from appellant's brief, are as follows:

"1. Whether the trial court erred in refusing to instruct the jury on the appellant's sole defense, to wit: accidental killing, thereby prejudicing the substantial rights of the appellant?

2. Whether the trial court erred in refusing to declare a mistrial upon the introduction of incompetent and prejudicial evidence, timely objected to by the appellant, thereby prejudicing the substantial rights of the appellant?

3. Whether the trial court erred in permitting the infant daughters of the appellant to testify, thereby prejudicing the substantial rights of the appellant?"

On the evening of December 18, 1975, the appellant returned home at about 7:00 p. m. and an argument ensued between him and his wife over his failure to return home the previous night, his drinking, and his absence from work on that day. Their three children were at home when appellant arrived. Lisa, 13 years of age, testified that when her father got home he told her mother that he wanted the pistol, whereupon, an argument took place. Lisa left the house and went to a neighbor's house. Tammy, 8 years old, testified that she heard her father say that he was going to kill her mother, and she testified also that she saw her father slap her mother. She too left the house and went to a neighbor's. Jill, 7 years of age, like her sisters, viewed the altercation. She called her grandmother Hendricks on the telephone and both her father and mother talked on the phone. Jill heard her father say, "You'd better come

up here because I am fixing to kill her, going to kill her." Jill testified that her father was breaking up dishes and talking filthy. She got scared and left too. The testimony revealed that on several prior occasions appellant had threatened to kill his wife.

The case was submitted to the jury under instructions on murder, first and second degree manslaughter, reckless homicide and self-defense. In addition, the court, in its instructions, defined the words "intentionally", "wantonness" and "recklessness". Appellant complains that the trial court erred in not giving a specific instruction on accidental shooting.

In *Owens v. Commonwealth*, Ky., 487 S.W.2d 897 (1972), this court said:

"* * * We believe that *Monson v. Commonwealth* [Ky., 294 S.W.2d 78], *Marye v. Commonwealth* [Ky., 240 S.W.2d 852] and *Hill v. Commonwealth* [Ky., 339 S.W.2d 170] to the extent that they require an accident instruction in prosecutions for voluntary manslaughter, involuntary manslaughter and negligent homicide from the use of a vehicle are in error and are hereby overruled. * * *"

■ That a killing was purely accidental is not a "defense" which, under the Penal Code, must be negated if there is evidence to raise it. Cf. *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807 (decided March 11, 1977). It is simply a denial that the act was done with the culpable state of mind required by the instructions as a condition precedent to a consideration. Hence, it was not necessary to give a defensive instruction on the theory of accident, because in order to find the appellant guilty the jury necessarily had to negate the explanation (rather than "defense") of accidental killing. See *Owens v. Commonwealth*, Ky., 487 S.W.2d 897, p. 900 (1972).

■ Complaint is made that the deceased, throughout the course of the trial, was referred to as the "victim" and the place where the shooting occurred was referred to as the "crime scene" or "scene of the crime." Appellant contends that these are expressions of opinion which only the jury is entitled to make. Surely Mrs. Hendricks was a victim of something—if nothing more than a victim of an accidental shooting. The phrase "crime scene" or "scene of the crime" implies that it is a place where a criminal offense took place. It was not for the Commonwealth's Attorney or any other witness to opine that a crime had taken place. The death may have been the result of an accidental shooting. Objections to the use of such words were sustained and the jury properly and adequately admonished, which, under the circumstances, is deemed adequate.

■ The appellant was shown to have made threats against the life of his wife and her family. It appears that he drank heartily and, when sufficiently saturated with alcohol, took on proportions of a self-designated killer, not that he ever carried out his threats except in the present instance. His conduct, when drunk, demonstrates his hostility to his wife and his wife's parents. Threats against his wife and her family formed a pattern for his belligerence. The trial judge evaluated the admissibility of the threats at an in-chambers hearing. He refused to permit evidence of some threats, but admitted evidence of others. We cannot say that these threats, under the present circumstances, were not admissible or that the trial judge abused his discretion in permitting this evidence to go to the jury.

Further, appellant argues that his children should not have been permitted to testify. The children were 13, 8 and 7 years of age when the killing took place. The trial was held three months thereafter. The substance of appellant's argument is threefold. First, he charges that the children had lived with their maternal grandparents since their mother's death and they were exposed to the natural hostility of the grandparents. Secondly, he complains that the children appeared to be afraid of him. Thirdly, appellant complains that at least the younger two children had such a lack of maturity and memory that they were un-

qualified to testify. That the children would be emotionally upset and appeared to be afraid of the appellant is only natural. Just three months prior thereto they had been put through a trying ordeal. They witnessed their father's hostility toward their mother and each ran to a neighbor's house to get away. This court can logically assume that appellant's mother-in-law and father-in-law would be hostile to him by reason of his conduct. We cannot, however, assume that this hostility permeated the children. Nowhere in the record is there any evidence to support appellant's charge. On the other hand, there are statements by the children that their grandparents had told them to tell the truth. Each of the children was questioned by the trial judge outside of the hearing of the jury, and each was found to be a competent witness.

In *Moore v. Commonwealth*, Ky., 384 S.W.2d 498 (1964), this court said:

"When the competency of an infant to testify is properly raised it is then the duty of the trial court to carefully examine the witness to ascertain whether she (or he) is sufficiently intelligent to observe, recollect and narrate the facts and has a moral sense of obligation to speak the truth. * * *"

 Not only did the trial judge determine that the children were competent to testify, but the transcript of the testimony of these children clearly demonstrates their intellectual ability to observe, recollect and narrate the facts and to recognize their moral obligation to speak the truth. The determination of the competency of a child witness rests within the sound discretion of the trial judge. *Swanigan v. Commonwealth*, 240 Ky. 504, 42 S.W.2d 726 (1931). We cannot say the trial judge abused his discretion.

The judgment is affirmed.

All concur.