**Kenneth N. PAYNE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Oct. 13, 1981.

Rehearing Denied Dec. 15, 1981.

sexual performance are predicated upon appellant's act of video-taping a sexual performance by boys under the age of sixteen years. The remaining thirteen counts of using a minor in a sexual performance are predicated upon appellant's act of taking photographs of a juvenile less than sixteen years of age engaged in sexual conduct.

A nine-day jury trial resulted in appellant's being found guilty on all counts. The jury recommended the minimum sentence for each count, which would make a total sentence of forty years, and that all sentences run concurrently, for a maximum commitment of twenty years. The trial court sentenced appellant to the minimum penalty on each offense, but provided for the sentences to run consecutively, for a maximum period of forty years.

Appellant's motion for a new trial was denied. He brings this case to this court as a matter of right. On this appeal appellant argues ten alleged errors. The first two issues will be considered and disposed of together. They charge that:

"I. Appellant was deprived of a fair trial by the trial court's refusal to permit his counsel to inform the jury in closing argument about the consequences of a not guilty by reason of insanity verdict." (NGRI)

"II. Appellant was denied due process of law and a fair trial by the trial court's refusal to give the jury any cautionary instruction regarding the consequences of a not guilty by reason of insanity verdict."

Jack E. Farley, Public Advocate, M. Gail Robinson, Kevin Michael McNally, Asst. Public Advocates, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

A Fayette County Grand Jury, on November 12, 1979, returned an indictment against the appellant charging him with eight counts of first-degree sodomy (KRS 510.070), one count of first-degree sexual abuse (KRS 510.110), and twenty counts of using a minor in a sexual performance (KRS 531.310). The acts giving rise to this indictment occurred during 1978 and 1979 and involved eleven juveniles and the appellant.

The eight counts of sodomy charge appellant with deviate sexual intercourse with a boy less than twelve years of age. The one count of sexual abuse charges appellant with subjecting a boy under the age of twelve years to sexual contact. Seven of the twenty counts of using a minor in a

At the appropriate time counsel for appellant requested the trial court to permit final arguments to include a discussion of the consequences of a NGRI verdict. Also, counsel for appellant tendered and sought to have the trial judge instruct the jury on the consequences of a NGRI verdict. Both motions were denied.

The time has come for this court to reevaluate our position on these two very important issues.

In *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380, 383 (1977), we held that an

instruction which informs the jury that a defendant found not guilty by reason of insanity would be admitted to a mental hospital for treatment is improper because it "... has no legitimate bearing on the issue of fact to be decided by the jury when the defense of insanity has been raised, that issue being whether the defendant was mentally responsible when the criminal act was done ...."

While denying a jury instruction on the consequences of an acquittal by reason of insanity, our cases have allowed both prosecuting and defense counsel during closing arguments to comment on the consequences of an insanity verdict. *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807 (1977); *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980); *Paul v. Commonwealth*, Ky., 625 S.W.2d 569 (1981).

The main function of the jury is to determine guilt or innocence. The constitutional right to a trial by jury is limited to that determination. *Perry v. Commonwealth*, Ky., 407 S.W.2d 714 (1966), *cert. den.* 386 U.S. 968, 87 S.Ct. 1052, 18 L.Ed.2d 121; *Allison v. Gray*, Ky., 296 S.W.2d 735 (1956), *cert. den.* 353 U.S. 914, 77 S.Ct. 673, 1 L.Ed.2d 668; *Williams v. Jones*, Ky., 338 S.W.2d 693 (1960), *cert. den.* 365 U.S. 847, 81 S.Ct. 808, 5 L.Ed.2d 811. The consideration of future consequences such as treatment, civil commitment, probation, shock probation, and parole have no place in the jury's finding of fact and may serve to distort it. For that reason we now hold that neither the prosecutor, defense counsel, nor the court may make any comment about the consequences of a particular verdict at any time during a criminal trial.

To the extent that *Jewell, Gall,* and *Paul,* supra, are inconsistent with this decision, they are overruled. We adhere to the reasoning of *Edwards,* supra: external considerations have no legitimate bearing on the jury's factual determination of guilt or innocence.

"III. The statute prohibiting use of a minor in a sexual performance (KRS 531.310) is unconstitutionally vague and overbroad."

Appellant charges that the statute prohibiting the use of a minor in a sexual performance (KRS 531.310), as interpreted through its definitional counterpart (KRS 531.300), violates the First and Fourteenth Amendments to the United States Constitution and Sections Eight and Eleven of the Kentucky Constitution as being vague and overbroad.

In *Bailey v. Farmers' Bank of White Plains*, 227 Ky. 179, 12 S.W.2d 312 (1928), this court said, "The law usually is what the average reasonable man thinks it ought to be." In *Arlan's Dept. Store of Louisville v. Commonwealth*, Ky., 369 S.W.2d 9 (1963), we recognized "... that if a law is so vague that the average reasonable man cannot intelligently choose in advance which course to follow, it is void."

Hindsight is better than foresight and any statutory scheme may possibly have been drafted more articulately. However, "(c)ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222, 228–9 (1972). The precise statutory language in question in this case runs afoul of neither the vagueness nor the overbreadth constitutional prohibitions.

KRS 531.310(1) is as follows:

"Use of a minor in a sexual performance. —A person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance."

When making any determination in this area, the purpose of the rule against vagueness must be remembered.

"... First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide

explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227 (1972).

After dissecting the definitional statute, KRS 531.300, it is appellant's position that a person of ordinary intelligence is unable to determine what sort of conduct is proscribed by the statute prohibiting the use of a minor in a sexual performance. KRS 531.310. Appellant contends that the prohibition of the use of minors in actual or simulated "acts of . . . homosexuality (or) lesbianism" is unconstitutionally vague. He finds impermissible vagueness in what he claims is the "circular definitional" process in which sexual conduct includes obscene exhibition of genitals and nudity, while the obscenity definition of KRS 531.-300(3)(b) refers back to the sexual conduct definition.

Appellant complains that it is unclear whether the homosexual or lesbian activity prohibition includes such seemingly innocuous activity as "two females embracing or two males standing with their arms around each other." As this court has noted, ". . . common sense must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Insurance Commission*, Ky., 450 S.W.2d 235, 237 (1970). The definitional section read as a whole, coupled with a reference to any standard dictionary, should provide the ordinary person of common sense a clear enough indication of the type of acts prohibited. The possibility of unreasonable enforcement of any statutory prohibition always exists no matter how precise the statute and judicial interpretations of it.

A similar analysis dispenses with appellant's "circular definition" contention. It is true that KRS 531.300(4)(b) and (d) include in the definition of "sexual conduct by a minor" the obscene exhibitions of genitals and nudity. It is also true, as appellant claims, that KRS 531.300(3)(b), in providing a part of the definition "obscene," requires the material to depict or describe sexual conduct by a minor in a patently offensive way. Were this the entire definition of obscene, the reference back and forth between the sections may well be confusing to the ordinary person of common sense. However, appellant fails to note that the other two subsections in the definition of obscene, KRS 531.300(3)(a) and (c), which, together with KRS 531.300(3)(b), must be considered in determining whether the exhibition of male or female genitals or nudity constitutes "sexual conduct by a minor." Thus, in the subject action the exhibition or exposure of the unclothed human male or female genitals, pubic area or buttocks, or the female breast, as included in KRS 531.-300(4)(b) and (d), is obscene and sexual conduct under the statute. The method of legislation by definitional cross-reference is one of common usage. It makes for clarity rather than vagueness.

Appellant submits that a clear and precise enactment may nevertheless be broad if in its reach it prohibits constitutionally protected conduct.

The primary purpose of the Kentucky statute relating to sexual exploitation of minors is clearly to protect children from the conduct of being used in a sexual performance. The word "use" is the cornerstone of the statute (KRS 531.310), and appellant's argument relating to statutes dealing with promoting and distributing materials portraying a sexual performance by a minor misses the mark when applied to the statute upon which he was charged and convicted. A greater degree of constitutional scrutiny is given statutes prohibiting the promotion and distribution of such materials. The courts clearly distinguish statutes protecting a minor from actual use in a sexual performance. Such conduct does not give rise to the same special free speech protection given the film or other media. In *U.S. v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679 (1968), the Supreme Court of the United States stated: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

Appellant cites two cases to support his overbreadth contention: *Graham v. Hill,* 444 F.Supp. 584 (W.D.Tex.1978), and *St. Martin's Press, Inc. v. Carey,* 440 F.Supp. 1196 (S.D.N.Y.1977). These two cases, in considering child pornography legislation, deal not with separate provisions prohibiting the use of children in sexual performances but with persons promoting or selling alleged child pornography. Indeed, in *Graham,* supra, the federal district court, in noting the important state interest in protecting minors from abusive and damaging conduct, said:

"If the statute were limited to prohibiting the depiction of minors *actually* engaging in sexual conduct, or even if the statute merely prohibited the observance of *actual* sexual conduct by minors, the Court would likely have no hesitation in declaring its constitutionality." (Emphasis added). 444 F.Supp. at 592.

■ Any overbreadth problems must be considered then in light of the less favored position of conduct in the constitutional framework. In order to declare a statute facially invalid on these grounds, "its deterrent effect on legitimate expression (must be) both real and substantial." *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125, 135 (1975).

Appellant was charged with and convicted for his conduct in using minors in sexual performances, which he happened to photograph and videotape. Any deterrent effect on legitimate expression in these or any other conceivable circumstances cannot be said to be real or substantial.

"IV. Appellant was improperly convicted of Counts 3, 4, 8, 9, 17, 19, 20, 21, 23, 24, 27, 28 and 29 of use of a minor in a sexual performance because the evidence which the Commonwealth introduced did not depict sexual conduct by a minor."

In support of his argument on this issue, appellant relies on the Fourteenth Amendment to the United States Constitution and to Section Eleven of the Kentucky Constitution. Having found that KRS 531.310 is not unconstitutionally vague or broad as measured by the First and Fourteenth Amendments to the United States Constitution and by Sections Eight and Eleven of the Kentucky Constitution, such finding carries with it the validity of the definition statute (KRS 531.300) since it was an integral part of the consideration required to be given in the determination of the validity of KRS 531.310.

Appellant challenges the sufficiency of the evidence as measured by these constitutional provisions to prove some of the counts of using a minor in a sexual performance. While admitting that the evidence does depict sexual conduct as defined by KRS 531.300(4)(a) and (b) as to some of the counts of the indictment, appellant charges that the evidence does not however show sexual conduct as to other counts of the indictment.

■ Appellant unsuccessfully sought to have the trial judge dismiss all counts of the indictment in which videotapes or photographs were involved. He argued that these particular counts of the indictment were not covered by KRS 531.310, since, allegedly, neither the photographs nor videotapes depict sexual conduct and were taken for personal viewing and not for profit. This argument of the appellant must fall for two reasons: (1) the statute under which the appellant was indicted, tried, and convicted properly charged the offenses, and (2) there was sufficient evidence to take the case to the jury. Counsel for appellant argues that, "Appellant was denied due process of law because 'no rational trier of fact could have found guilt beyond a reasonable doubt.'" However, a review of the evidence as it pertained to the challenged counts does not support appellant's contention. The answer to this issue is found in *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977), wherein we said:

"If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal. Applying that criterion, we cannot avoid the conclusion that the verdict of the jury in this case was not unreasonable."

The trial court correctly weighed the evidence and properly submitted to the jury the issue of using a minor in a sexual performance as charged in the above-numbered counts.

"V. Appellant's convictions for eight counts of first degree sodomy and one count of first degree of sexual abuse must be reversed because of the unconstitutional conclusive presumption that a child under twelve is incapable of consenting to those sexual acts."

Eight counts of the indictment for first-degree sodomy (KRS 510.070(1)(b)(2)), a Class A felony, and one count for first-degree sexual abuse (KRS 510.110(1)(b)(2)), a Class D felony, involve a minor less than twelve years of age. Both KRS 510.070 and 510.110 contain a conclusive presumption provision that a minor twelve years of age cannot consent to sodomy or sexual abuse. In further dealing with lack of consent, it is stated in KRS 510.020(1) and (3)(a) that:

"Lack of consent.—(1) Whether or not specifically stated, it is an element of every offense defined in this chapter that the sexual act was committed without consent of the victim.

. . . .

(3) A person is deemed incapable of consent when he is:

(a) Less than 16 years old . . . ."

Appellant asserts that his convictions cannot stand because they are based on an irrational conclusive presumption in violation of the Fourteenth Amendment to the United States Constitution and Section Eleven of the Kentucky Constitution.

In dealing with the philosophy, not constitutionality of the legislation but with the philosophy itself, of establishing an age at which a person is conclusively presumed to be unable to consent to an act of sex, this court has dealt with it at length. We have not, however, answered the question of whether the legislature can constitutionally establish an age at which a person is conclusively presumed to be unable to consent to an act of sex. Neither counsel for appellant nor counsel for the Commonwealth has referred this court to an opinion of any court which would deny or sanction the constitutionality of such legislation. Our independent research has not revealed such authority.

It is hornbook law that sex-oriented offenses, especially those involving minors and more especially involving minors in the age bracket of ten to twelve years, have had special attention not only by the legislature but by the courts generally. This court, in speaking to the age of consent proposition, in *Merriss v. Commonwealth*, 287 Ky. 58, 151 S.W.2d 1030 (1941), said, "In the reign of Queen Elizabeth carnal knowledge of a female child under ten years of age was by statute made a felony even though she consented to the act . . . ." In *Nider v. Commonwealth*, 140 Ky. 684, 131 S.W. 1024 (1910), this court was faced with a conviction of the crime of carnally knowing a female under the age of sixteen years. The purpose of the statute was discussed at length with this conclusion:

"... The statute was enacted to protect female children who are of such tender years as to be unable to appreciate the enormity of this offense, and the law should be so administered and construed as to not only protect them from persons who actually commit the act of carnal intercourse, but as well to save them from those who endeavor to do so . . . ."

In *Lair v. Commonwealth*, Ky., 330 S.W.2d 938 (1960), this court was concerned with the violation of the statute prohibiting indecent and immoral practices. In differentiating this statute from others dealing with sex offenses, we wrote:

"... KRS 435.100 was enacted to protect infants, either male or female, under the age of eighteen years from being carnally known, while KRS 435.105 is directed to the protection of infants under the age of fifteen years against indecent and immoral practices by one over the age of seventeen years. Each is directed to a specific but different social problem and constitutes a separate and distinct offense. . . . "

In *Cooper v. Commonwealth*, Ky., 550 S.W.2d 478 (1977), this court was faced with a conviction on charges of sodomy in the first degree, assault in the second degree, and unlawful imprisonment in the second degree. In the course of the opinion we undertook to demonstrate the wisdom of statutes dealing with different ages of consent. In doing so, we quoted liberally from the Commentary accompanying KRS 510.-140 as follows:

"But the basic purpose of KRS 510.140 is to preserve the concept of statutory rape and statutory sodomy. When read in conjunction with the rape and sodomy statutes, KRS 510.140 is designed primarily to prohibit nonconsensual sexual intercourse or deviate sexual intercourse under two circumstances: (i) when the victim is 14 or 15 and the defendant is less than 21; or (ii) when the victim is 12, 13, 14, or 15 and the defendant is less than 18 years of age. In this context the ages of the defendant and the victim are critical. Force is not an element of this offense. The victim is statutorily incapable of consent. However, mistake as to age is a defense under KRS 510.030.

The purpose in denominating such conduct between persons within the specified age groups as sexual misconduct rather than rape or sodomy is to eliminate an undesirable stigma. In such cases the defendant may well have been persuaded by the 'victim' to engage in the proscribed conduct. It seems unnecessarily harsh to have a defendant within the prescribed age limitation who has been convicted of such a statutory offense to bear a criminal record labeling him as a 'rapist' or 'sodomist.' KRS 510.140 takes a more realistic approach to the penalty imposed while at the same time prohibiting the undesirable conduct.

If the accused is 21 or over and the victim is less than 16, the offense constitutes third degree rape. If the accused is 18 or older and the victim is under 14, the offense constitutes second degree rape. Any sexual intercourse with a person less than 12 years old constitutes first degree rape regardless of the age of the accused."

The Commentary to Chapter 510, Sexual Offenses, deals with the ages of consent, with the following reasoning:

"The critical ages for offenses prohibited by this Chapter are 12, 14 and 16. Age 12 was chosen to protect pre-puberty victims. Sexual intercourse with a child less than 12 years of age indicates a considerable probability of aberration in the aggressor. Age 14 was chosen to protect children in the period of puberty when the child arrives at the physical capacity to engage in intercourse but remains seriously deficient in comprehension of the social, psychological, emotional and even physical significance of sexuality. It is still realistic to regard a child under 14 years of age as victimized. Age 16 was chosen to cover that period of later adolescence when the chief significance of sexual behavior is its contravention of the moral standards of the community."

"Age limit—In most jurisdictions, an arbitrary age of consent has been designated by statute without reference to the physical development of the female. The age of consent has been fixed at ages varying from 10 to 18 years...."

65 Am.Jur.2d, Rape, Sec. 17, p. 770.

"Consent—Since, by statutes in many jurisdictions, a female under a certain age is declared incapable of consenting to an act of intercourse, it is no defense in a prosecution for statutory rape that she did, in fact, consent."

65 Am.Jur.2d, Rape, Sec. 38, p. 782.

In *Michael M. v. Superior Court of Sonoma County, Calif.*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), the question presented to the Supreme Court of the United States was whether California's statutory rape law violated the equal protection clause of the Fourteenth Amendment to the United States Constitution by providing gender-based classifications. Appellant, a 17½-year-old male, had had unlawful sexual intercourse with a female under the age of 18 years in violation of the California statutory rape law. Challenge to

the statute was made on constitutional grounds asserting that the statute unlawfully discriminated on the basis of gender. In dealing with the subject, the Supreme Court wrote that the legislature may provide for special problems of women. Appellant contended that the statute was unconstitutional as it applied to him because he, like Sharon, was under 18 at the time of sexual intercourse. Therein, it is stated:

"... Petitioner argues that the statute is flawed because it presumes that as between two persons under 18, the male is the culpable aggressor. We find petitioner's contentions unpersuasive. Contrary to his assertions, the statute does not rest on the assumption that males are generally the aggressors. It is instead an attempt by the legislature to prevent illegitimate teenage pregnancy by providing an additional deterrent for men ...."

The Supreme Court of California found that the classification "male and female" was supported not by mere social convention but by the psychological fact that it is the female exclusively who can become pregnant. It then portrayed the tragic human cost of illegal teenage pregnancies, including the large number of teenage abortions, the medical risks associated with teenage pregnancies, and the social consequences of teenage childbearing. It concluded that the state has a compelling interest in preventing such conditions and that the California statute did not violate the Fourteenth Amendment to the United States Constitution. The United States Supreme Court affirmed the reasoning of the California Supreme Court.

Appellant stresses the impropriety of an irrebuttable presumption against consent. The United States Supreme Court has dealt with the irrebuttable presumption doctrine as it applies to age, but only as it has been considered in civil actions, not in criminal proceedings. Presumptions in the annals of criminal law, both rebuttable and irrebuttable, have been narrowly and cautiously applied. In *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), it is held that a rebuttable presumption must at least be said, with substantial assurance, to have likely flowed from the proven facts on which it is made to depend. So much for rebuttable presumptions. More stringent must be the test as applied to irrebuttable presumptions. The conclusive presumption of inability to consent is not of recent vintage. It has been with us at least from the reign of Queen Elizabeth of England (1558–1603). Coming to this country as a part of our common law, the doctrine has universally been spoken to by the state legislative bodies. The truth of the facts upon which the presumption has been based are beyond cavil. The state has a recognized interest in the welfare of its citizens who, by reason of age or physical or mental disability, cannot care for themselves. So it is with children of tender years. The conclusive presumption that children less than sixteen years of age are unable to give consent to sex acts is but a further extension of the protective arm of government which is universally followed.

■ We have no hesitancy in holding that the irrebuttable presumption that minors, male or female, less than sixteen years of age, which would, of course, encompass those minors twelve years of age, are unable to give consent to sex acts does not violate the Fourteenth Amendment to the United States Constitution or Section Eleven of the Constitution of the Commonwealth of Kentucky.

"VI. Appellant was deprived of a fair trial and due process by the trial court's denial of his petition for a change of venue."

Appellant petitioned the trial court for a change of venue based on the allegation that due to widespread dissemination of prejudicial material the appellant could not obtain a fair and impartial trial in Fayette County, Kentucky. KRS 452.220 deals with change of venue. KRS 452.220(2) is as follows:

"If the application is made by the defendant, it shall be made by petition in writing, verified by the defendant, and by the filing of the affidavits of at least two (2) other credible persons, not kin to

or of counsel for the defendant, stating that they are acquainted with the state of public opinion in the county objected to, and that they verily believe the statements of the petition for the change of venue are true. The commonwealth's attorney or, in his absence from the county, the county attorney shall be given reasonable notice, in writing, of the application. . . ."

Counsel for appellant accompanied his motion for a change of venue with 26 form affidavits. Copies of numerous articles from newspapers, not limited to local circulation, commenting in a manner unfavorable to appellant on the charges that were made against him were filed in support of his motion. The Commonwealth countered with 18 affidavits to the effect that appellant could and would obtain a fair and impartial trial in Fayette County. The court held a hearing on the motion and, in denying it, said, "Even though this case has received much publicity there does not exist a considerable probability of the accused being unable to obtain a fair and impartial trial in Fayette County."

◼ The question of whether venue should be changed addresses itself to the sound discretion of the trial court. In *Williams v. Commonwealth*, 287 Ky. 570, 154 S.W.2d 563 (1941), this court discussed the propriety of a motion for a change of venue. We wrote:

"The question presented . . . has been before this and other courts many times, and none of them has ever defined with precision any definite or settled course to be pursued by the court trying it. On the contrary, the most that has been determined is contained in a general statement that a trial court is vested with a sound discretion in determining the question upon the evidence and circumstances of each case, and that unless such discretion has been abused to the probable detriment of the accused the appellate court will not disturb the order of the trial court in disposing of the motion. But it will be perceived that such indefinite statement of the law—which we hereby

approve as correct—erects no permanent or fixed standard to guide the court in passing upon such questions, but relegates their determination, and the course to be pursued, to the facts and circumstances of each case and to the sound judgment of the court as to whether or not such facts and circumstances reveal a situation of bias, prejudice or other adverse circumstances whereby there is considerable probability of the accused being unable to obtain a fair and impartial trial within the venue of the pending indictment. With the law in that condition it is an easy task to find cases decided by both this and other courts wherein the ruling of the trial court was upheld, and others wherein it was set aside, dependent upon the appellate court's conclusion as to whether or not in the particular facts disclosed, a due regard for the constitutional requirement of a fair and impartial trial has been violated. . . ."

Counsel for appellant argues that the trial court erroneously used the "considerable probability" of the accused being unable to obtain a fair and impartial trial rather than a "reasonable likelihood" that in the absence of such relief a fair trial cannot be had.

◼ The former premise was used by this court in the *Williams* case, supra, and has been followed consistently. We see no need for a change at this time. However, we have weighed the evidence and the totality of the circumstances in light of the rule suggested by appellant, and find that there is no abuse of discretion on the part of the trial judge in denying appellant's motion for a change of venue. Appellant has not called this court's attention to any fact or circumstance that would indicate or even hint that the jury that tried him was not impartial.

"VII. The trial court deprived appellant of fundamental fairness, equal protection and his right to present a defense by closing the trial during the testimony of the minor witnesses but refusing to close it if appellant were to testify, re-

sulting in appellant's declining to testify."

At the conclusion of the Commonwealth's case, counsel for appellant informed the court that he had advised the appellant to testify but that appellant would not do so because of the presence of the press. Appellant argues that the trial court violated the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section Eleven of the Kentucky Constitution by closing the trial during the testimony of the minor witnesses but refusing closure should appellant testify. Appellant did not testify. He does not question the propriety of the closure itself but claims that under the circumstances of this case he was denied a fair trial by the refusal of the court also to close the trial during his testimony.

■ While appellant claims his fear of causing irreparable harm to the juvenile witnesses prompted his refusal to testify, it is difficult to discern any harm to appellant resulting from his choice not to testify. Clearly, in any retrial of the case all testimony would be in open court, *Lexington Herald Leader Co., Inc. v. Tackett*, Ky., 601 S.W.2d 905 (1980), and appellant would be placed in the same dilemma in which he found himself at the first trial. It is also clear that the testimony of the victims was eventually to have been made public, *id.* at 906. Given these facts, appellant's articulated reasons for refusing to testify are questionable, and the harm resulting therefrom, if any, was the result of his own choice.

The United States Supreme Court has noted that many factors influence the defendant's choice of whether to testify, and it concluded "it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." *McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 23 L.Ed.2d 711, 713 (1971). Here, appellant was not even faced with a choice of trial strategy, and his defense strategy was not curtailed by the trial court's actions. Rath-

er, he chose not to testify based on his alleged personal concern for the children.

■ The decision whether to take the witness stand is solely on the defendant, and absent an action of substantial prejudice by the trial court, the defendant may not be heard to demand reversal because, in retrospect, he may have made the wrong decision. No rights of the appellant guaranteed to him by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section Eleven of the Kentucky Constitution were denied by the action of the trial court in its refusal to order closure during his testimony.

"VIII. Appellant was deprived of a fair trial by the trial court's ruling, over defense objection, that the videotape and twenty irrelevant photographs were admissible at his trial."

Prior to trial, counsel for the Commonwealth and counsel for the appellant conferred with the trial judge relative to the use of a videotape (Commonwealth Exhibit 6) and twenty photographs of nude boys (Commonwealth Exhibit 21). Over objection of counsel for appellant, the trial judge ruled that this evidence was competent. Appellant charges that the admission of this evidence constituted unnecessary overkill, was in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section Eleven of the Kentucky Constitution, and was prejudicial to him. Appellant sought to stipulate to all of the acts shown on the videotape; however, counsel for the Commonwealth did not agree to the proposed stipulation and insisted on showing the tape.

■ This court knows of no rule or principle of law that requires the Commonwealth's Attorney to try his case by stipulation. The videotape showed acts of perversion on the part of appellant, and in one instance it showed an unidentified minor. The trial judge was of the opinion that the whole tape, when viewed in light of the nature of the charges made against appellant, was competent to show design or pat-

tern. The twenty photographs of unidentified nude boys against whom no charges had been filed were, over objection of counsel for appellant, permitted to be introduced into evidence. These photographs, like the videotape, were competent to show design and pattern.

The videotape and photographs being competent evidence, it was not improper to permit them to be viewed by the jury, and the fact that the introduction of them into evidence may have been prejudicial to appellant does not make them less admissible. If the evidence offered by the Commonwealth in criminal cases was not prejudicial to the defendant, it is unlikely that there would ever be a conviction.

In his brief counsel for appellant argues that the use of the videotape and the photographs "deprived him (appellant) of a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section Eleven of the Kentucky Constitution." This assertion by appellant is not supported by any discussion of the constitutional issue. As a matter of fact, in concluding appellant's discussion of this issue, he writes, "Because the videotape and the twenty photos were prejudicial, unnecessary overkill, appellant requests reversal of his conviction."

The constitutional questions attempted to be raised here were not presented to the trial court for its consideration; consequently, come too late at this point in time. Nevertheless, upon a consideration of the issues, we find that there is no violation of the Sixth and Fourteenth Amendments to the United States Constitution or of Section Eleven of the Kentucky Constitution. The trial court did not err in permitting the videotape and the photographs to be put in evidence.

"IX. Appellant was deprived of a fair trial because the trial court permitted Ronnie and Donnie Good, who were incompetent, to testify."

Appellant charges that the witnesses Ronnie and Donnie Good, eight-year-old twins, whose pictures appear on the videotape, did not understand the meaning of

telling the truth and should not have been permitted to testify. Prior to permitting these children to testify, the court held a hearing out of the presence of the jury to determine their qualifications. At the conclusion of the hearing, the trial court said:

*In re Ronnie Good*:

"The Court finds that he knows the difference between right and wrong and understands the consequences of telling a falsehood. He has the ability to answer questions and appears to have the capacity to recollect his events and matters. The court will allow him to testify believing that he is competent although only eight years old, and we will proceed on that basis then."

*In re Donnie Good*:

"Note the defense objection and I'll overrule the objection. The Court finds that this child is competent. He understands the nature of the oath and what it means to tell the truth and that it is wrong to tell a lie, and he has the ability and capacity to recall things that he has experienced in the past and to tell about them and to answer questions. I'll declare him competent to testify."

In *Hendricks v. Commonwealth*, Ky., 550 S.W.2d 551 (1977), this court said, "The determination of the competency of a child witness rests within the sound discretion of the trial judge."

A review of the testimony of both Ronnie and Donnie Good reveals that each of them was able to recall and narrate the facts without minimizing or exaggerating them.

In the discussion of this issue, as in the discussion of issue No. VIII, counsel for appellant attempts to raise both federal and state constitutional questions that were not presented to the trial court for its consideration; consequently, they came too late. We see no violation of either the Sixth or Fourteenth Amendments to the United States Constitution or of Section Eleven of the Kentucky Constitution.

The action of the trial judge in permitting Ronnie and Donnie Good to testify is

supported by the record, and we do not find that the court abused its discretion in permitting the infants to testify.

> "X. Appellant was deprived of a fair trial by the Commonwealth's use of the term 'insanity' during the trial and the trial court's use of it in its instructions."

 Appellant finally contends he was deprived of a fair trial by the Commonwealth's use of the term insanity during the trial and the trial court's use of it in its instructions. Without regard to whether defense counsel properly objected in all instances to the use of the term, appellant's contention is without merit. Shorthand terms often are used in order to facilitate communications in the courtroom. As noted by the Commonwealth, "the jury is deemed capable of exercising reason and logic." *Commonwealth v. Tyree*, Ky., 365 S.W.2d 472, 477 (1963). It is therefore not unreasonable to expect that the jury will make its decision based upon the final instructions given by the trial judge. Here, the trial judge gave an instruction outlining the elements of KRS 504.020, the "mental disease or defect" statute relied upon by appellant. Interpreting the evidence presented in light of the instruction and the statutory requirements included therein, the jury rejected appellant's "mental disease or defect" defense and found him responsible for the criminal conduct for which he was convicted. The use of the term insanity by the Commonwealth and the trial court did not deprive appellant of a fair trial.

The judgment of the Fayette Circuit Court from which this appeal followed is affirmed.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENS, STEPHENSON and STERNBERG, JJ., sitting.

PALMORE, C. J., and AKER, CLAYTON, STEPHENS and STERNBERG, JJ., concur.

LUKOWSKY, J., concurs in result only.

STEPHENSON, J., dissents to the extent that the opinion will now prohibit comment during closing argument on the consequences of an insanity verdict. In all other respects he concurs in the opinion.