**Harold SIMPSON, Sr., Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

**No. 86–SC–623–MR.**

Supreme Court of Kentucky.

Sept. 8, 1988.

As Amended Sept. 22, 1988.

As Modified Nov. 17, 1988.

Frank W. Heft, Jr., Daniel T. Goyette, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Daniel E. Cohen and Michael L. Harned, Asst. Attys. Gen., Frankfort, for appellee.

LAMBERT, Justice.

This matter of right appeal is from the judgment of the Jefferson Circuit Court sentencing appellant to twenty years imprisonment upon his conviction of manslaughter in the first degree. The assignments of error will be addressed in the order of their presentation in appellant's brief.

On the evening of February 17, 1984, appellant and his wife returned to their home from a social function. Upon arrival, they discovered appellant's stepdaughter and William Earl Bibb sitting on the porch. Appellant did not approve of the romantic relationship between his stepdaughter and Bibb and this had resulted in previous altercations between the two men. Nevertheless, the couple was invited inside the home.

Inside the house, appellant and Bibb began to argue. At one point, Bibb told appellant to shut up and appellant responded by telling Bibb not to tell him to shut up in his own home. Appellant then went to his bedroom and returned with a gun. The two men argued further and appellant ordered Bibb to leave. After going outside Bibb looked inside the house and then walked away. As Bibb was leaving, appellant went to the doorway and with the screen door open, fired two shots. After the first shot, Bibb was still standing. As the second shot was fired, the screen door hit appellant's hand. Bibb fell to the sidewalk. His death was caused by a single entry gunshot.

After the shooting, appellant left his home, put the gun in a garbage container, and went to a local bar where he saw and talked with an acquaintance. The acquaintance testified that appellant appeared to be distracted and said he believed he might have shot someone. On advice of the acquaintance, appellant returned to his home, and with his son went to a neighbor's home where his son called the police. After the police arrived, appellant told Officer Ossofsky where he had placed the gun and told the officer that he did not mean to kill Bibb. Other than appellant, the only eyewitness to the shooting was appellant's nine-year-old grandson. According to this child, appellant was standing in the doorway with the screen door open when the shots were fired. After the first shot, he saw Bibb standing and then as the second shot was fired, he saw the screen door hit appellant's hand. He looked to where Bibb had been standing and saw him lying on the sidewalk.

Appellant did not testify at trial. Shortly after the shooting, however, he gave a tape-recorded statement to the police and it was played for the jury. In the statement, appellant said that the shooting was an accident; that he only meant to fire a warning shot and did not intend to kill Bibb. A firearms expert testified that the gun in question was a .357 magnum single-action revolver which must be fully cocked or half-cocked manually before firing. He stated that the force of a door alone would not cause such a gun to discharge unless it had been recocked, but if such were the case, the slamming of a door on a hand holding the gun might cause a reflex action of the trigger finger.

Appellant first contends that the trial court erred in instructing the jury on manslaughter in the first degree. He argues that at most the evidence justified instructions on manslaughter in the second degree and reckless homicide, instructions which were requested by appellant and given by the trial court. In support of his view of the evidence, appellant points to his

tape-recorded statement given to the police officer in which he said the shooting was an accident, that he did not intend to kill Bibb, and that he wasn't even shooting at him. He also points to the testimony of a neighbor to whom appellant stated that he did not mean to shoot Bibb, and to the statement he gave to the police at the scene to the effect that he did not mean to kill Bibb. Appellant also relies on the fact that the screen door hit his hand as the second and fatal shot was fired.

We believe appellant's view of the evidence is too restrictive. Evidence was presented that appellant disliked Bibb; that he and Bibb argued inside the house; that he obtained a gun from his bedroom; that he ordered Bibb to leave the house, and even though Bibb complied, he went to the front door and fired the gun twice. In view of the foregoing evidence, we believe the trial court was correct in instructing the jury in a comprehensive manner. While the jury would have been entitled to believe appellant's version of the incident, it was not required to do so. *Nichols v. Commonwealth,* Ky., 657 S.W.2d 932 (1983). Evidence was presented from which the jury could reasonably infer that appellant intended to cause the death of Bibb. *McClellan v. Commonwealth,* Ky., 715 S.W.2d 464 (1986). The jury is allowed reasonable latitude in which to infer intent from the facts and circumstances surrounding the crime. *Peace v. Commonwealth,* Ky., 489 S.W.2d 519 (1972). The evidence was more than sufficient to justify instructing the jury on manslaughter in the first degree.

■ Appellant next contends that the trial court erred in overruling his objection during voir dire examination when the Commonwealth's attorney asked whether the jury would hold the Commonwealth to a higher standard than proof beyond a reasonable doubt. He argues that such constitutes a violation of our prohibition against defining reasonable doubt (*Com-*

*monwealth v. Callahan,* Ky., 675 S.W.2d 391 (1984)) in that it calls upon the jury to think about what constitutes a higher standard than proof beyond a reasonable doubt.

In *Commonwealth v. Callahan, supra,* we denounced the practice of defining or attempting to define reasonable doubt. We followed the *Callahan* rule in *Commonwealth v. Goforth,* Ky., 692 S.W.2d 803 (1985), and in our recent decision, *Marsch v. Commonwealth,* Ky., 743 S.W. 2d 830 (1988). In all of those cases, some attempt was made to use other words to convey to the jury the meaning of "beyond a reasonable doubt." In this case, there was no such effort.

By this we intend no retreat from our previous decisions on this issue. Counsel should be mindful that upon the occurrence of a bona fide violation of the *Callahan* rule, a reversal will result.

■ The next issue is whether appellant is entitled to enforcement of a plea agreement which appears to have been approved by the court prior to receipt of the presentence investigation report and formal sentencing. By the terms of the agreement, appellant would have received a sentence of five years upon his plea of guilty to manslaughter in the second degree.

Appellant was indicted for murder. During plea negotiations and on March 26, 1985, the Commonwealth offered in writing to amend the indictment to manslaughter in the second degree and recommend a term of five years imprisonment in return for a plea of guilty. On that same day, appellant entered a "plea of guilty under *North Carolina v. Alford,*" and he and his counsel signed an instrument reflecting the plea. Among other things, the plea instrument recited that the plea was not based on any promise of leniency; that the trial judge was not bound by any agreement between the Commonwealth and appellant; and it disclosed that the maximum punish-

ment for manslaughter in the second degree was ten years imprisonment. As shown by the transcript of the hearing, the indictment was amended in accordance with the agreement, and the Commonwealth recommended imprisonment for five years. During the hearing, however, the court clearly informed appellant that a sentence of up to ten years could be imposed. Next in the record and bearing the same date, March 26, 1985, there appears an order signed by the court and styled "Guilty Plea—Sentencing Postponed." This order recites that on March 26, 1985, the defendant appeared with counsel and withdrew his former plea of not guilty and entered a plea of guilty to the charge of manslaughter in the second degree. Page 2 is as follows:

The Court being informed, and on recommendation of the Commonwealth's Attorney and by agreement of defendant and counsel, finds the defendant guilty in accordance with the plea(s) entered herein and fixes punishment as follows: Five (5) years in the penitentiary.

On oral motion of the defendant with counsel, and the Court being informed, IT IS ORDERED that sentencing be postponed until the 26th day of April, 1985, and that the Division of Probation and Parole prepare a written presentence investigation of the defendant returnable on or before the aforesaid date.

To await further orders of the Court, the defendant remain on same bond.

/s/ Ellen B. Ewing
ELLEN B. EWING, Judge

Thereafter and prior to April 26, 1985, the date set for formal sentencing, the Commonwealth filed a motion requesting the court to consider a "victim impact statement." In this document, the victim's brother specifically objected to this plea agreement or any agreement, demanding that appellant be tried for murder.

Finally, the record reveals that at the sentencing hearing on April 26, 1985, and after consideration of the presentence investigation report and oral argument presented by counsel for the parties, and members of the victim's family, the court announced its intention to impose a sentence of ten years, the maximum for the offense of manslaughter in the second degree. Appellant then moved the court for leave to withdraw his guilty plea and this motion was sustained. The Commonwealth likewise moved the court to withdraw its motion to amend the indictment and this motion was sustained. Thus, after all of the foregoing, the status quo was restored.

Appellant contends that by virtue of the order of March 26, 1985, and its language "and fixes punishment as follows: five (5) years in the penitentiary," the court should be required to enforce the original agreement. The Commonwealth responds that upon review of the entire proceeding, it is clear that no final sentence was imposed, that appellant and his counsel were well aware that final sentencing would not occur until later, and indeed, that no final sentence could be imposed by virtue of the prohibition contained in KRS 532.050 against final sentencing prior to receipt and consideration of the presentence investigation report.

We fully recognize that the order signed by the court on March 26, 1985, strongly suggests that the trial court approved the plea agreement and would impose sentence accordingly. However, it also states that sentencing would not occur until a later date and that a presentence investigation report would be made and returned to the court for use in sentencing. The postponement of sentencing coupled with the prior oral and written admonition that the court was not bound by any agreement was sufficient to inform appellant and his counsel that the sentencing decision was not irrevocable.

Next, appellant claims that the circumstances surrounding his aborted guilty plea constitute a violation of his constitutional protection against being "twice put in jeopardy" and a violation of a contractual right he acquired by virtue of the agreement. We disagree.

■ It was appellant who moved the court to withdraw his guilty plea and his confession made during the plea proceeding. Such constitutes a waiver of his constitutional protection against double jeopardy for the purpose of trial on the charge in the indictment. *U.S. v. Jerry*, 487 F.2d 600 (3rd Cir.1973). Moreover, as shown by the discussion hereinabove, under the law of Kentucky, the trial court was without authority to "unqualifiedly accept" the plea agreement. Thus *U.S. v. Holman*, 728 F.2d 809 (6th Cir.1984) and *U.S. v. Cruz*, 709 F.2d 111 (1st Cir.1983), are inappropriate. Likewise, appellant has failed to provide persuasive authority for the application of contract law to criminal proceedings and we fail to see its application to this case. The substantive and procedural law of crimes protects the rights of citizens without resorting to unrelated fields of law.

For the foregoing reasons, appellant's claim for specific enforcement of the plea bargain agreement is denied.

Appellant next contends that the omission of a portion of the Commonwealth's case in chief from the videotape record requires reversal and remand for a new trial. In lieu of the omitted portion of the record, a narrative statement was prepared pursuant to CR 75.13. Nevertheless, appellant argues that although the factual evidence is included, the narrative statement does not reflect objections to evidence and rulings by the court.

■ We have previously addressed this issue and decline to modify our existing rule. Without a showing of prejudicial error, we are unwilling to hold that the absence of specific objections and rulings creates an inadequate record which denies appellant his constitutional right of appeal. As we said in *Goins v. Meade*, Ky., 528 S.W.2d 680, 683 (1975):

There is not even the contention of error. Have we now reached the point where there is a rebuttable presumption of error and the burden is on the trial court of general jurisdiction to prove the nonexistence of possibility of error?

Likewise, in *Cardine v. Commonwealth*, Ky., 623 S.W.2d 895, 897 (1981), we said:

Surely, if the defense counsel and the trial judge both participated in preparing the narrative at issue here, any errors brought to the court's attention would have been noted therein. The narrative statement was an adequate substitute for the trial transcript.

■ Of significance is the fact that the parties erred initially in assuming that the Commonwealth's case was totally missing. In fact, only three witnesses were omitted from the video tape. This Court corrected the parties' oversight and supplemental briefs were ordered filed. With regard to the witnesses whose testimony was omitted, in view of the exactness with which counsel was able to summarize the testimony from trial notes, we cannot believe that any objection which would have been grounds for reversal escaped recall. We are entirely satisfied that the narrative statement herein fulfilled its function of affording appellant a full and fair appellate review.

Appellant's final claim of error is the court's refusal to give an accidental shooting instruction. On this issue, *Hendricks v. Commonwealth*, Ky., 550 S.W.2d 551 (1977), is dispositive. In *Hendricks*, this Court held that it was not necessary to give an instruction on the theory of accident. The reasoning behind this holding is as follows:

That a killing was purely accidental is not a "defense" which, under the Penal Code, must be negated if there is evidence to raise it. It is simply a denial that the act was done with the culpable state of mind required by the instructions as a condition precedent to a consideration. Hence, it was not necessary to give a defensive instruction on the theory of accident, because in order to find the appellant guilty the jury necessarily had to negate the explanation (rather than "defense") of accidental killing. (Citations omitted.) *Id.* at 553.

We find the reasoning of *Hendricks* compelling and find no reason to depart from established precedent.

Accordingly, the judgment of the trial court is affirmed.

All concur.